UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., a/s/o VILLAGE AT CAMELBACK PROPERTY OWNER ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> QUEENSBORO FLOORING CORP., <br><br> Defendants. | CIVIL ACTION NO. 3:10-CV-1559 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

This is a consolidated action concerning property damage and personal injury claims arising out of an explosion and fire in July 2009 that occurred during construction work at a townhouse located in Tannersville, Pennsylvania. Several cases have been consolidated into this one action. The present dispute concerns the parties originally named in *Pozarlik v. Camelback Associates, Inc.*, No. 3:11-CV-1349, which was joined into this consolidated action on March 15, 2012. (Doc. 31). Arkadiusz Piotr Pozarlik and Agnieszka Zofia Pozarlik (the "Pozarliks") are plaintiffs asserting negligence and loss of consortium claims against several defendants, including the Village at Camelback Property Owners Association, Inc., and its property manager, Kathleen Simoncic (together, the "Defendants").

Now before the Court are the Pozarliks' motion for Rule 37 sanctions (Doc. 145) and the Defendants' motion for a Rule 26(c) protective order (Doc. 154). The motions have been fully briefed, and oral argument on both motions was held on June 30, 2014.

In their motion, the Pozarliks request the imposition of sanctions against the Defendants and their counsel for a variety of transgressions, including failure to timely disclose or produce certain discoverable information or documents, failure to timely produce an adequate privilege log for documents withheld from discovery, failure to timely supplement disclosures and discovery responses as new information or documents become available, failure to obey various discovery orders, alleged misrepresentations or lack of candor in discovery papers and discovery-related proceedings before the Court, an excessive number of objections — many allegedly intended to coach the witness — and instructions not to answer questions during depositions in an effort to impede, delay or frustrate fair examination of the deponent, and generally dilatoriness, lack of candor, and lack of good faith in responding to discovery and in discovery-related motions practice before the Court. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(a); Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 37(c)(1). As a sanction, the Pozarliks have requested that the Defendants be prohibited from presenting a liability defense as against the Pozarliks, *see* Fed. R. Civ. P. 37(b)(2)(ii); Fed. R. Civ. P. 37(c)(1)(C), and an award of costs and reasonable attorney fees incurred by the Pozarliks in connection with these discovery disputes and related motion practice, *see* 28 U.S.C. § 1927; Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(a)(5); Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A).

The Defendants have responded by filing a corresponding motion for a protective order prohibiting the disclosure of certain documents. *See* Fed. R. Civ. P. 26(c). Although the Defendants do not explicitly request an award of attorney fees, the federal rules provide for one if a Rule 26(c) motion is granted. *See* Fed. R. Civ. P. 26(c)(3).

These motions address several different categories of information or documents, which the Court will address seriatim.

### 1. TRAVELERS D&O LIABILITY POLICY

Under the federal rules, a party to federal litigation has an automatic obligation to disclose, without awaiting a formal discovery request, "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). Under Rule 34, a party may be made to produce and permit the copying of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

In addition, in July 2012, the Pozarliks served Rule 34 requests for the production of:

> 9. The entire insurance policies applicable to the within matter including but not limited to documents containing the liability limits, which cover the damages to all condominiums and common areas which sustained damage.
>
> 10. Any and all catastrophic, casualty, umbrella or excess policies which is applicable to this matter, including but not limited to documents containing the liability limits, which cover the damages to all condominiums and common areas which sustained damage.

(Doc. 145-26).

The Defendants responded in August 2012, raising no specific objections to either of these document requests, but referring the Pozarliks to its response to the Rule 34 requests served by another defendant in this case, Queensboro Flooring Corporation. (Doc. 145-26). Queensboro Flooring Corporation, however, does not appear to have made a similar Rule 34 request for the production of insurance policies. (*See* Doc. 145-37).

On January 31, 2013, the Pozarliks filed their first Rule 37(a) motion to compel, seeking an order concerning the Defendants' responses to several other discovery requests, but not the

insurance policies at issue in this motion. (Doc. 72). On April 3, 2013, the Court entered an Order directing the Pozarliks to serve more specific discovery requests within two weeks of the date of the Order, and directing the Defendants to respond to those discovery requests within thirty days of receiving them. (Doc. 86). Both parties appear to have complied with the Order of April 3, 2013, each timely serving their more specific discovery requests and responses, thus discharging their obligations under the April 3rd Order. (Doc. 107; Doc. 107-3; Doc. 107-4; Doc. 145-29). The Pozarliks' Rule 34 requests, as revised, requested the production of:

> 9. The entire insurance policy(s) applicable to the within matter including but not limited to documents containing the liability limits.
>
> 10. Any and all catastrophic, casualty, umbrella or excess policies which are applicable to this matter, including but not limited to documents containing the liability limits, which cover the damages to all condominiums and common areas which sustained damage.

(Doc. 145-29).

On June 14, 2013, the Pozarliks filed a second Rule 37(a) motion to compel, seeking an order directing the Defendants to produce responsive insurance documents. (Doc. 107). In their motion papers, the Pozarliks noted that the Defendants had produced only sixteen pages of insurance policy documents, including the declaration pages and amendatory endorsements of a single policy, and not the entire insurance policy or policies that the Pozarliks were entitled to receive under Rule 26(a) and pursuant to their Rule 34 requests. (Doc. 108).In their response, the Defendants claimed to have fully and completely answered the insurance-related requests, but they did not dispute the Pozarliks' description of the insurance-related documents they had produced. (Doc. 111). On August 1, 2013, following a telephonic discovery conference, the Court granted the Pozarlik's second Rule 37(a) motion in part, and denied it in part. (Doc. 116). With respect to the requested insurance documents, the motion was granted in full and the Defendants were directed to produce responsive documents within fourteen days. (Doc. 116).

On August 14, 2013, within the fourteen-day window, the Defendants produced a complete, certified copy of the general liability insurance policy for which it had previously produced isolated pages. (Doc. 152, at 18). On December 11, 2013, defendant Simoncic revealed for the first time at her deposition that the property owners' association also had a $25 million umbrella policy, which provided additional coverage above the $2 million limits of the general liability policy previously produced. (Doc. 145-21, at 26–27). After the deposition, the Pozarliks wrote to the Defendants on December 13, 2013, requesting a complete copy of the umbrella policy. (Doc. 145-33). On December 18, 2013, the Defendants replied and produced a complete, certified copy of the umbrella policy, more than four months after its production had been ordered by the Court. (Doc. 145-34).

On April 17, 2014, the Pozarliks wrote again to discuss a variety of discovery issues, including a request for a copy of any directors and officers ("D&O") liability insurance policy in effect at the time of the explosion. (Doc. 145-13; Doc. 164-6). On April 23, 2014, the Defendants responded, advising that its general liability carrier, QBE Insurance, had not issued a D&O policy, but that the Defendants would inquire with the umbrella carrier, Zurich, to determine if a D&O policy had been issued. (Doc. 164-9). On April 28, 2014, the Pozarliks wrote again to discuss outstanding discovery issues, including an explanation that the umbrella policy produced in December contained reference to an underlying D&O policy issued by Travelers. (Doc. 145-16; Doc. 164-11). On May 6, 2014, the Defendants responded, disclaiming any information on a Travelers policy. (Doc. 145-17; Doc. 164-13). The Pozarliks wrote again on May 9, 2014, to request a copy of the D&O policy. (Doc. 145-51; Doc. 164-12). On May 15, 2014, the Pozarliks produced fourteen pages of a D&O policy, including a renewal certificate and several amendatory endorsements. (Doc. 145-25; Doc. 164-14). The policy documents they

5

produced, however, did not include a policy jacket or base policy form containing the operative terms of the D&O policy (e.g., insuring clauses, limits of liability). (Doc. 145-25; Doc. 164-14). Moreover, the policy documents produced on May 15th pertained to a subsequent coverage period, rather than the policy period when the explosion occurred. (Doc. 145-25; Doc. 164-14). On June 10, 2014, the Defendants produced a second set of D&O policy documents. (Doc. 164-18). This time, the policy documents pertained to the policy period during which the explosion occurred, but once again, the documents produced consisted only of a renewal certificate and various amendatory endorsements. (Doc. 164-18).

At the time of oral argument on June 30, 2014, almost eleven months after the Court had expressly ordered its production, a complete copy of the Travelers D&O policy still had not been produced. Counsel for the Defendants indicated at the hearing that she had obtained the previous certified copies of the general liability and umbrella policies from the Defendants' insurance agent, and that she could similarly request a certified copy of the D&O policy as well. It is unclear why she had not yet done so. The Defendants have not contended that the Travelers D&O policy is not within their control, and the apparent ease with which they have previously obtained complete, certified copies of insurance policies from their insurance agent, coupled with counsel's explicit offer at oral argument to do so with respect to the D&O policy as well, demonstrates that the Travelers D&O policy is within the Defendants' control and therefore subject to the disclosure or production obligations imposed on the Defendants by Rule 26(a) and Rule 34. *See Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 567–68 (S.D. Ind. 1990).

Accordingly, the Pozarliks' motion will be granted with respect to the Travelers D&O policy. The Defendants will be ordered to produce a complete, certified copy of the Travelers D&O policy within fourteen days of the date of the accompanying Order. Moreover, the

Defendants' failure to timely produce this and other insurance policies may support sanctions under Rule 37(b)(2) and Rule 37(c).

### 2. INSURANCE AGENT CONTACT INFORMATION

Apparently in an effort to track down the missing D&O policy and perhaps obtain it by non-party subpoena, the Pozarliks requested contact information for Chris Grynaviski, the Defendants' insurance agent, and they have advanced the Defendants' failure to provide this information as a basis for relief in their motion. But Rule 26(a)(1)(A)(iv) requires only the production of insurance agreements themselves, as under Rule 34, and none of the formal interrogatories before the Court request the identity or contact information for the Defendants' insurance agent. The Pozarliks first requested this contact information by letter on April 28, 2014, and then again on May 9, 2014. (Doc. 145-16; Doc. 145-17; Doc. 164-11; Doc. 164-13). On May 29, 2014, only thirty-one days after the Pozarliks first wrote to request Mr. Grynaviski's contact information, the Defendants responded by letter to provide it to the Pozarliks. (Doc. 152-2; Doc. 160-7). Assuming *arguendo* that the April 28th letter request constituted an interrogatory, the Defendants' response was timely and complete. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 6(d). Accordingly, the Pozarliks' motion will be denied as moot with respect to Mr. Grynaviski's contact information. Moreover, even if this letter request is construed as a Rule 33 interrogatory, having been timely answered, it provides no basis for the imposition of sanctions.

### 3. 298 OVERLOOK WAY FILE

The Pozarliks have repeatedly requested the production of the complete, separate file on 298 Overlook Way maintained by the Defendants. The Defendants have repeatedly answered that, to the extent such a file exists, it has already been produced, identifying different sets of

bates numbers in its previous document productions each time they have responded. The inconsistent responses confused the Pozarliks, leading them to seek relief with respect to this item in their second Rule 37(a) motion. (Doc. 107). On August 1, 2013, the Court granted the Pozarliks' motion with respect to the 298 Overlook Way file, acknowledging the confusion and directing the Defendants to produce responsive documents within fourteen days. (Doc. 116). The Defendants failed to comply with the Court's directive, producing nothing and instead referencing the Pozarliks to yet another set of bates numbers in its previous document productions. At oral argument, counsel for the Defendants acknowledged that, despite the Court's order to do so, they did not re-produce the 298 Overlook Way file. Accordingly, the Pozarliks' current motion will be granted with respect to the 298 Overlook Way file, and the Defendants will be directed once again to produce, within fourteen days of the date of the accompanying Order, the complete 298 Overlook Way file as kept in the ordinary course of business, as a separate document production set, each page bearing a new and unique bates number to distinguish it from documents previously produced. Moreover, the Defendants' failure to timely produce this file may support sanctions under Rule 37(b)(2).

   4. **THE CARL KARCHER AND JUDITH BRUNSON FILES**

The Pozarliks have requested production of personnel files on Carl Karcher, employed by the property owners' association as a maintenance manager for the Camelback community, and Judith Brunson, secretary of the board of directors of the property owners' association at the time of the explosion. The Defendants responded that there is no personnel file on Ms. Brunson, as she was not an employee, but only a unit file for her condominium unit, they refused to produce files relating to either Karcher or Brunson, and they filed their own motion for a Rule 26(c) protective order, seeking to prohibit production of these files on the ground that

they contain certain sensitive personal information, including personal identifiers, medical information regarding Mr. Karcher and his dependents, and financial information regarding Ms. Brunson. The Defendants subsequently produced redacted copies of the Karcher employment file and the Brunson unit file on June 10, 2014. (Doc. 164-18). Based solely on the representations of defense counsel at hearing, as no privilege log has been produced for any of the materials withheld from these files, the Pozarliks have no objection to the redactions. Accordingly, both parties' motions will be denied as moot with respect to the Karcher and Brunson files. However, because the information was produced *after* the Pozarliks had filed the instant Rule 37 motion, the Defendants' failure to timely produce these files may support an award of reasonable expenses incurred in making that motion, including attorney fees. *See* Fed. R. Civ. P. 37(a)(5).

   5. **TAPE RECORDING**

In July 2012, the Pozarliks served Rule 33 interrogatories on each of the Defendants, inquiring whether the Defendants had made "any statements, recorded interviews, memorandums, reports or testimony . . . regarding . . . the events surrounding this incident." (Doc. 145-26, at 7; Doc. 145-26, at 13). On August 22, 2012, the Defendants jointly answered this interrogatory: "No." (Doc. 145-26, at 15). Ms. Simoncic signed the Defendants' answers to interrogatories, certifying that they were complete and correct at the time they were made. (Doc. 145-26, at 16). *See generally* Fed. R. Civ. P. 26(g)(1). In addition, the Pozarliks' served a Rule 34 request for the production of "any and all statements concerning this action made by any witness, including any statements from the parties herein, or their respective . . . employees," to which the Defendants did not object. (Doc. 145-26, at 19; Doc. 145-26, at 21; *see also* Doc. 145-37, at 6; Doc. 145-37, at 12).

9

At her December 2013 deposition, Ms. Simoncic revealed that she had in fact interviewed several employees of the property owners' association the day after the explosion, recording their statements on audio tape. (Doc. 145-21, at 61–62). Immediately after the deposition, the Pozarliks specifically requested that the tape be produced. (Doc. 145-33). They reiterated this request on several other occasions during the months leading up to the instant discovery motions. (Doc. 145-13; Doc. 145-16; Doc. 145-51; Doc. 164-6; Doc. 164-11; Doc. 164-12). The Defendants have consistently responded that they did not possess the tape, and that either it was lost or it is in the possession of Ms. Brunson, who had requested that it be made. (Doc. 145-17; Doc. 145-18; Doc. 145-21, at 62; Doc. 145-23, at 2; Doc. 145-34; Doc. 145-36; Doc. 160-24; Doc. 164-9; Doc. 164-13). At oral argument, counsel for the Defendants reiterated their representation that the tape was not presently in their possession, custody or control.

"The law is clear that a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D. Pa. 1999).

> A duty to preserve evidence, independent from a court order to preserve evidence, arises when there is (1) pending or probable litigation involving the defendant[,] (2) knowledge of the existence or likelihood of litigation, (3) foreseeable prejudice to the other party if the evidence were to be discarded, and (4) evidence relevant to the litigation.
>
> *Winters*, 187 F.R.D. at 520.

In this case, the Defendants were on notice of the likelihood of litigation, in which they necessarily would be involved, before they conducted these interviews and made the tape. The explosion and resultant fire destroyed or damaged several townhomes, including their exteriors and adjacent common property owned or managed by the property owners' association. The Defendants had been engaged in a long-running dispute with the Chernovs, owners of 298

Overlook Way, regarding the homeowners' efforts to construct an addition onto their townhome, including active litigation in state court. One of the workers, Mr. Pozarlik, was grievously injured and transported from the scene by ambulance. The very next day, the Defendants created an audio tape on which Ms. Simoncic recorded her eyewitness statement and the statements of five other property owners' association employees or contractors — Carl Karcher, Dave Kalucki, Chris Travis, Phillipe Cruz, and John Hilbert — each of whom was at the scene during or immediately after the explosion.

At a minimum, these recorded witness statements may have assisted the Pozarliks in impeaching later contradictory testimony or refreshing the recollection of witnesses whose memories had dimmed in the intervening five years that this litigation has been pending. These contemporaneous witness statements may also have lead the Pozarliks to other relevant evidence. With respect to Ms. Simoncic's own statements on that tape, and possibly Mr. Karcher's, they might have served as admissions by party-opponents, admissible in their own right.

Whatever the present disposition of the tape, it is clear to the Court that the Defendants violated their fundamental duty to preserve relevant evidence when they failed to retain the tape. *See Winters*, 187 F.R.D. at 520. Moreover, despite having personally recorded these statements, Ms. Simoncic, answering on behalf of both herself and the property owners' association, unequivocally denied their existence in response to interrogatories. *See* Fed. R. Civ. P. 26(g).

Accordingly, the Pozarliks' motion will be granted with respect to the missing tape recording. The Defendants' failure to preserve and produce the tape recording, and Ms. Simoncic's false certification with respect to the Defendants' unequivocal denial, in response to

a Rule 33 interrogatory, that any such tape had been made, may support sanctions under Rule 26(g)(3) and Rule 37(c)(1). *See also* Fed. R. Civ. P. 26(e).

   6. **PRIVILEGE LOG**

The Pozarliks also contend that the Defendants' privilege log is inadequate. The original log, served in September 2013, was plainly inadequate. *See generally Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001). A revised log was served on April 23, 2014. (Doc. 145-18; Doc. 160-24; Doc. 164-9). The Pozarliks maintained that this revised log was also inadequate, and the Defendants took the position that the revised log satisfied the requirements imposed by Rule 26(b)(5). (Doc. 145-16; Doc. 145-17; Doc. 164-11; Doc. 164-13). Nevertheless, on May 6, 2014, the Defendants supplemented their privilege log with a letter addressing certain documents at the request of the Pozarliks, providing further detail regarding the basis for their claims of attorney-client privilege or work product protection. (Doc. 154-5). They also waived their work product claim with respect to one document, a photograph taken by an attorney, and produced it as an attachment to the letter. (Doc. 154-5). On June 4, 2014, after the Pozarliks filed their motion for sanctions, the Defendants served a further-revised privilege log. (Doc. 164-17). Based on this newly revised privilege log, the May 6th letter (Doc. 154-5), the Affidavit of Kathleen Simoncic (Doc. 154-4; Doc. 160-4), and the representations of counsel at oral argument, the Defendants appear to have adequately articulated privilege claims with respect to some — but not all — of the withheld documents. Accordingly, the Pozarliks' motion will be granted in part with respect to the adequacy of the Defendants' privilege log. The Pozarliks will be directed to identify those documents they believe should be disclosed, and the Defendants will be directed to produce copies of those documents to the Court for *in camera* review. Because the information necessary to support the

Defendants' claims of attorney-client privilege and work product protection was not produced until *after* the Pozarliks had filed the instant Rule 37 motion, the Defendants' failure to timely produce an adequate privilege log may support an award of reasonable expenses incurred in making that motion, including attorney fees. *See* Fed. R. Civ. P. 37(a)(5).

### 7. IMPROPER AND EXCESSIVE OBJECTIONS AT DEPOSITION

The Pozarliks also contend that sanctions are warranted due to the obstreperous behavior of counsel for the Defendants at during the deposition of Kathleen Simoncic. They have tallied 360 objections on her part, including several where she instructed the deponent not to answer the question posed without any legitimate basis (e.g., attorney-client privilege, protective order), and several speaking objections that appear to have been intended suggest to the deponent how to answer a pending question. The Pozarliks contend that defense counsel's excessive and disruptive objections "impede[d], delay[ed], [and] frustrate[d] the fair examination of" Ms. Simoncic. *See* Fed. R. Civ. P. 30(d)(2).

"It is the witness — not the lawyer — who is the witness." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993). Although counsel has a right and duty to object to protect her client from improper questions, it must done within the rules. *See Heller v. Consolidated Rail Corp.*, Civ. A. No. 95-3935, 1995 WL 476244, at *3 n.2 (E.D. Pa. Aug. 7, 1995). For example, under the federal rules, an attorney is not permitted to object to form and demand clarification of a question the *attorney* claims not understand; the witness should be permitted to answer the question posed, or to ask for clarification herself if she does not understand the question. *See Birdine v. City of Coatesville*, 225 F.R.D. 157, 159 (E.D. Pa. 2004); *Hall*, 150 F.R.D. at 530 n.10. Moreover, "lawyers are strictly prohibited from making any comments . . . which might suggest or limit a witness's answer to an unobjectionable question." *Hall*, 150 F.R.D. at 531; *see also*

13

*Deville v. Givaudan Fragrances Corp.*, 419 Fed. App'x 201, 209 (3d Cir. 2011) (affirming Rule 30(d)(2) sanctions imposed when attorney "testified on behalf of her witness by way of suggestive speaking objections"); *Birdine*, 225 F.R.D. at 159 (objection that deponent "already testified that within five feet was the closest he got" was improperly suggestive). Likewise, "counsel are not permitted to state on the record their interpretations of questions, since those interpretations are irrelevant and often suggestive of a particularly desired answer." *Hall*, 150 F.R.D. at 530 n.10. Objections to relevance or materiality need not be made at deposition, as they are preserved for trial. *Hall*, 150 F.R.D. at 530. What objections are made must be "succinct and verbally economical, stating the basis of the objection and nothing more." *Birdine*, 225 F.R.D. at 158; *see also* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner."); *Hall*, 150 F.R.D. at 530 ("As for those few objections which would be waived if not made immediately, they should be stated pithily.").

The transcript of Ms. Simoncic's deposition, taken over two days, serves as a compendium of such improper objections. (Doc. 145-21; Doc. 145-22). They are so ubiquitous that the Court finds it unnecessary and redundant to identify exemplary selections, particularly given the exhaustive catalog of improper objections already set forth by the Pozarliks in their briefs. (Doc. 152, at 27–32). Accordingly, the Pozarliks' motion will be granted with respect to defense counsel's improper and excessive interposition of objections at the deposition of Ms. Simoncic. The obstreperous behavior of defense counsel at Ms. Simoncic's deposition may support sanctions under 28 U.S.C. § 1927 and Rule 30(d)(2).

### 8. SANCTIONS

As a sanction for the misconduct of the Defendants and their counsel, the Pozarliks request an order prohibiting the Defendants from presenting a liability defense. *See* Fed. R. Civ.

P. 37(b)(2)(A)(ii); Fed. R. Civ. P. 37(c)(1)(C). This, the Pozarliks argue, is an appropriate sanction for the Defendants' failure to preserve and produce the missing audio tape and for their apparent bad faith and extreme dilatoriness in complying with the Court's discovery orders directing them to produce all relevant insurance policies and to re-produce the 298 Overlook Way file. Indeed, the Pozarliks note that courts have imposed the more severe sanctions of dismissal or default judgment in cases involving less egregious discovery abuses, but, in an exercise of grace and temperance, they merely request the preclusion of a liability defense. In addition, the Pozarliks request as a sanction that they be awarded reasonable expenses and attorney fees incurred in connection with this Rule 37 motion. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(a)(5); Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A).

### A. PRECLUSION OF LIABILITY DEFENSE AS A SANCTION

"It is well settled that a court has discretion to issue sanctions for failure to comply with discovery orders." *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986). But where the proposed sanctions include dismissal with prejudice, entry of default judgment, or the preclusion of claims or defenses, the exercise of that discretion is governed by six factors originally enumerated by the Third Circuit in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). *Knoll v. City of Allentown*, 707 F.3d 406, 409–10 (3d Cir. 2013). These factors are:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal[, default judgment, or preclusion of claims or defenses], which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.
>
> *Poulis*, 747 F.2d at 868.

The Court has considered each of the six *Poulis* factors, but finds the second and fifth factors to be dispositive. Due to the limited prejudice caused by the Defendants' conduct and the availability of effective alternative sanctions, the Court will deny the Pozarliks' request for preclusion of a liability defense as a sanction for the Defendants' discovery misconduct.

1. **Prejudice**

With respect to the delayed production of insurance policies, there is no showing of actual prejudice to the Pozarliks beyond the accretion of attorney fees that ordinarily occurs in discovery motion practice. For one, the insurance policies have no bearing on the merits of this case. Indeed, liability insurance policies are generally inadmissible as evidence. *See* Fed. R. Evid. 411; *Maggard Truck Line, Inc. v. Deaton, Inc.*, 573 F. Supp. 1388, 1391 (N.D. Ga. 1983). Their mandatory disclosure under Rule 26(a)(1) is merely intended to facilitate settlement and litigation strategy, enabling "counsel for both sides to make the same realistic appraisal of the case." *See Bennett v. La Pere*, 112 F.R.D. 136, 141 (D.R.I. 1986) (quoting Fed. R. Civ. P. 26 advisory committee notes (1970) (explicitly permitting discovery of insurance coverage)); *see also* Fed. R. Civ. P. 26 advisory committee notes (1993) (adopting automatic disclosure obligation with respect to liability insurance policies). Moreover, there is nothing to suggest that the late disclosure of applicable insurance coverage has had any actual impact on the prospect for settlement in this case, nor on the Pozarliks preparation for trial, currently scheduled for February 2015.

With respect to the delayed production of the 298 Overlook Way file, once again there is no showing of actual prejudice to the Pozarliks beyond the accretion of attorney fees that ordinarily occurs in discovery motion practice. The contents of this file have already been

produced; and re-production of the file, as originally ordered by the Court last year, will cure any confusion as to what the file contains.

With respect to the missing tape recording, the potential for prejudice is much more tangible, but the nature of the tape suggests that any actual prejudice will be limited, particularly if the Pozarliks fully utilize the discovery tools provided to them by the federal rules. Although the tape recorded statements of Ms. Simoncic and, possibly, Mr. Karcher, might have served as admissible evidence on their own, there is nothing to suggest that the contemporaneously recorded statements would differ in any material respect from deposition testimony of Ms. Simoncic and Mr. Karcher. Otherwise, the tape recorded statements appear likely to have primarily served as a resource to refresh the recollection of witnesses whose memories may have later faded, or impeach any later contradictory testimony. But although the Pozarliks reference these potential uses in their motion papers generally, they provide no concrete examples of witnesses whose memories have dimmed or whose testimony has changed, largely because they have not attempted to depose them.

### 2. Alternative Sanctions

The Court finds that alternative sanctions, less drastic that preclusion of a liability defense, will suffice in this case. In light of the limited prejudice caused by the Defendants' conduct, the Court concludes that the imposition of a limited award of costs and attorney fees is an adequate sanction for the conduct at issue, and it should serve to deter further abuses by the Defendants and their counsel.

### B. AWARD OF COSTS AND ATTORNEY FEES

"The traditional American rule is that each party to litigation bears its own costs, including attorney's fees." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 193

(3d Cir. 1988). Over the years, however, several statutes and rules have been adopted to create exceptions to the general rule against fee-shifting. *See Doering*, 857 F.2d at 193. Several of them apply in this case to permit the Court, in the exercise of its discretion, to impose an award of costs and attorney fees as a sanction for the Defendants' discovery misconduct. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(a)(5); Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A).

The *Poulis* factors do not apply to monetary sanctions such as an award of costs and attorney fees. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, __ F.3d ___, 2014 WL 2883891, at *5 n.14 (3d Cir. June 26, 2014); *see also Knoll*, 707 F.3d at 410 ("[W]hen sanctions do not preclude *all* claims or defenses such that a party still has her day in court, *Poulis* does not apply."). "Where a district court decides to award a monetary sanction, such as attorney's fees, the total amount of such a sanction (as well as the initial decision whether to impose such a sanction) should be guided by equitable considerations." *Doering*, 857 F.2d at 195. The amount of a monetary sanction should be specifically related to expenses incurred as a result of the violations. *See Martin v. Brown*, 63 F.3d 1252, 1263 n.15 (3d Cir. 1995). But a court nevertheless "may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand." *Doering*, 857 F.2d at 195.

With these principles in mind, the Court concludes that the following is an appropriate sanction for the discovery misconduct of the Defendants and their counsel:

1. An award of up to $1,500 in reasonable expenses and attorney fees incurred by the Pozarliks in connection with oral argument on their Rule 37 motion (Doc. 145); and

2. An award of reasonable expenses and attorney fees incurred by the Pozarliks in connection with the deposition of the other four individuals — Dave Kalucki, Chris

> Travis, Phillipe Cruz, and John Hilbert — whose witness statements were recorded on the missing audio tape, if the Pozarliks choose to take their depositions;
>
> 3. Leave to re-depose Ms. Simoncic, if the Pozarliks so chose, and an award of reasonable expenses and attorney fees incurred by the Pozarliks in connection with that deposition if the Pozarliks choose to take it.

The Defendants and their counsel shall be jointly responsible for the payment of these sanctions. The Pozarliks shall file a single, comprehensive petition for fees and expenses pursuant to the accompanying Order within thirty days after the close of fact discovery.

### C. REPRIMAND

In addition, the Court finds that the clear pattern of uncivil, antagonistic, and dilatory conduct of defense counsel in this case merits a formal reprimand. Defense counsel is reminded that practice before this Court is governed both by the Pennsylvania Rules of Professional Conduct and the Middle District of Pennsylvania Code of Professional Conduct. L.R. 83.23.2 (adopting Pa. R. Prof'l Conduct and Middle District of Pennsylvania Code of Professional Conduct). Counsel's attention is directed to the following specific provisions and admonished to incorporate them into their professional practice, at least in connection with any litigation before this Court:

> 1. "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Pa. R. Prof'l Conduct 3.2.
>
> 2. "I will treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work. Professional courtesy is compatible with vigorous advocacy and zealous representation. Even though antagonism may be

expected by my client, it is not part of my duty to my client." L.R. app. C ¶ 2 (Middle District of Pennsylvania Code of Professional Conduct).

3. "I will earnestly attempt to resolve differences through negotiation, expeditiously and without needless expense." L.R. app. C ¶ 6.

4. "Procedural rules are necessary to judicial order and decorum. I will be mindful that pleadings, discovery processes and motions cost time and money. I will not use them heedlessly. If an adversary is entitled to something, I will provide it without unnecessary formalities." L.R. app. C ¶ 7.

Defense counsel is further admonished that sanctions for any future misconduct in this litigation may reflect the effectiveness, or lack thereof, of the present corrective action.

An appropriate Order will follow.

**Dated: July 3, 2014**                                    **BY THE COURT:**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**