## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., a/s/o VILLAGE AT CAMELBACK PROPERTY OWNER ASSOCIATION, et al., | CIVIL ACTION NO. 3:10-CV-1559 (MEHALCHICK, M.J.) |
| Plaintiffs, | |
| v. | |
| QUEENSBORO FLOORING CORP., | |
| Defendants. | |

### MEMORANDUM OPINION

This is a consolidated action concerning property damage and personal injury claims arising out of an explosion and fire in July 2009 that occurred during construction work at a townhouse located in Tannersville, Pennsylvania. Several cases have been consolidated into this one action. The present dispute concerns the parties originally named in *Pozarlik v. Camelback Associates, Inc.*, No. 3:11-CV-1349, which was joined into this consolidated action on March 15, 2012. (Doc. 31). Arkadiusz Piotr Pozarlik and Agnieszka Zofia Pozarlik (the "Pozarliks") are plaintiffs asserting negligence and loss of consortium claims against several defendants, including the Village at Camelback Property Owners Association, Inc., and its property manager, Kathleen Simoncic (together, the "Defendants").

The Court previously addressed and resolved a number of discovery issues between these parties in an Order and Memorandum dated July 3, 2014. (Doc. 174 and Doc. 175). As part of that Order, the Court reviewed the adequacy of the privilege log (Doc. 154-5) provided by Defendants to the Plaintiffs in response to Plaintiffs' discovery requests. Based

upon a review of that privilege log, and counsels' representations at oral argument, the Plaintiffs were directed to identify to the Defendants those documents listed on the privilege log which they believe should be disclosed, and the Defendants were then directed to produce copies of those documents to the Court for an *in camera* review. On July 17, 2014, Defendants furnished the Court with copies of the allegedly privileged documents (Doc. 177).

This dispute concerns Defendants' objection to producing several documents on the grounds that they are protected by attorney-client privilege and the work-product doctrine. Of the documents on the privilege log, The following documents from the privilege log were identified by the Plaintiffs for *in camera* review; also listed is the privilege asserted by the Defendants with regard to each of these documents:

| 1 | Letter between attorneys on transfer of file - 8/5/13; | Attorney Work Product |
|---|---|---|
| 2 | Letter from attorney to client on winning case - 3/31/08; | Attorney-Client Privilege |
| 3 | Fax message on what sent to Chernov - 8/14/07; | Attorney-Client Privilege |
| 5 | Fax message on trial preparations - 5/21/08; | Attorney-Client Privilege |
| 6 | Fax message on trial witnesses - 9/10/08; | Attorney Work Product |
| 7 | Fax message on trial attendance – 9/9/08; | Attorney-Client Privilege |
| 8 | Fax message from Jones to Simoncic on trial - 8/28/08; | Attorney-Client Privilege |
| 9 | Fax message from Jones to Hendricks on trial - 9/22/08; | Attorney-Client Privilege |
| 10 | Email chain on how to handle Chernov - 7/13/07; | Attorney-Client Privilege |
| 11 | Photographs by attorney - only one (1) photograph was produced. Please produce additional photographs; · | Attorney Work Product |
| 12 | Fax message on Bylaws interpretation – 7/19/07; | Attorney-Client Privilege |

| 13 | Letter on Declaration interpretation – 1/17/95; | Attorney-Client Privilege |
|----|----|----|
| 14 | Email chain on draft letter to Karchner - 7/31/07; [1] | Attorney Work Product |
| 15 | Email on how to handle Chernov- 7/27/07; [2] | Attorney-Client Privilege |
| 16 | Email on draft letter to Chernov - 7/20/07; [3] | Attorney-Client Privilege |
| 17 | Fax message on advice about Chernov- 7/20/07; | Attorney-Client Privilege |
| 20 | Fax message on litigation status - 8/23/07; | Attorney-Client Privilege |
| 21 | Fax message on litigation status - 8/6/07; | Attorney-Client Privilege |
| 24 | Fax message on Chernov answer- 10/8/07; | Attorney-Client Privilege |
| 25 | Fax message on draft letter to Chernov- 10/11/07; | Attorney-Client Privilege |
| 29 | Letter on trial appearances·- 7/9/08; | Attorney-Client Privilege |
| 30 | Expert fax on roofing data- 9/16/08; | Attorney-Client Privilege |
| 31 | Letter on appeal process – 4/24/09; | Attorney-Client Privilege |
| 33 | Fax message on what docs to give out - 8/29/07; | Attorney-Client Privilege |
| 34 | Fax from Board; attorney notes - 9/23/08; | Attorney Work Product |
| 39 | Exhibit C: inspection report; attorney notes - 5/7/08; | Attorney Work Product |
| 40 | Attorney opinion letter from Jones on repairs - 12/29/95; | Attorney-Client Privilege |
| 41 | Fax on Township permits - 5/5/08; | Attorney-Client Privilege |
| 42 | Court to attorney on status; | Attorney Work Product |
| 43 | Letter on Chernov unresponsiveness - 7/27/07; and, | Attorney Work Product |
| 44 | Fax on Chernov responses to cease - 7/31107. | Attorney-Client Privilege |

---

[1] Plaintiffs identify this date as 1/31/07; Defendants indicate that it should be 7/31/07.

[2] Plaintiffs identify this date as 1/27/08; Defendants indicate that it should be 7/27/07.

[3] Plaintiffs identify this date as 1/20/07; Defendants indicate that it should be 7/20/07. (Doc. 177).

I.   **APPLICABLE STANDARDS**

A.  ATTORNEY-CLIENT PRIVILEGE

The overwhelming majority of the documents Plaintiffs seek from the privilege log are purportedly protected by the attorney-client privilege and therefore, according to the Defendants, protected from discovery. "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Teleglobe*, 493 F.3d at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Teleglobe*, 493 F.3d at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *Teleglobe*, 493 F.3d at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984) (privilege not waived by presence of insurance agent who arranged coverage and aided in preparation of answer);

*see also Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 632–33 (E.D. Pa. 2011) (attorney-client privilege not waived when 18-year-old student-plaintiff consulted with her lawyer in the presence of her parents and a neighbor who facilitated her obtaining legal counsel); *Harkobusic v. Gen. Am. Transp. Corp.*, 31 F.R.D. 264, 266 (W.D. Pa. 1962) (attorney-client privilege applied to communications between client's brother-in-law and various attorneys where brother-in-law was acting as client's agent in seeking legal advice). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

### B. Work-Product Doctrine

"The work-product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work-product promotes the adversary system by enabling attorneys to prepare cases without fear that their work-product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28.

Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine

protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. *If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.*

> *Rail Freight Fuel Surcharge*, 268 F.R.D. at 118 (emphasis added); *see also Restatement (Third) Lawyers* § 87 cmt. h ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work-product and opinion work-product. "Fact work-product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of

such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work-product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Furthermore, Rule 26(b)(4)(C), "provide[s] work-product protection for attorney-expert communications regardless of the form of the communications," except for communications that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or(iii) identify assumptions that the party's attorney provided that the expert relied on in forming the opinions expressed. *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 1:11-CV-1784, 2014 WL 1334218 (M.D. Pa. Apr. 2, 2014); *Fialkowski v. Perry*, No. 11–5139, 2012 WL 2527020 *3 (E.D.Pa. June 29, 2012. The rules and accompanying advisory notes clearly identify that communications between an attorney and an expert regarding the attorney's conclusions, opinions, and legal theories are privileged work-product.

As with the attorney-client privilege, the party claiming that evidence is protected attorney work-product has the burden of establishing that work-product protection applies. *Billups v. Penn State Milton S. Hershey Med. Ctr.,* 1:11-CV-1784, 2014 WL 1334218 (M.D. Pa. Apr. 2, 2014); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir.2000). Unlike the attorney-client privilege, disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information. *See*

7

*Westinghouse Elec. Corp.*, 951 F.2d at 1428 ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.").

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product-doctrine serves instead to protect an attorney's work-product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

## II.   THE DISPUTED DOCUMENTS

The Court has reviewed each of the allegedly privileged documents *in camera*. Defendants' objections to the production of these documents shall be **SUSTAINED** in part and **OVERRULED** in part, for the reasons and in the manner stated hereinafter.

### A.   DOCUMENTS NOS. 1, 3, 5, 7, 8, 12, 15, 16, 17, 21, 24, 29, AND 44

These documents are either fax cover sheets, cover letters, or e-mails that served as transmittal messages forwarding litigation documents without any comment at all, or with a brief note stating "please advise" or "see attached." While some of the attached documents[4] may themselves be protected by the attorney-client privilege or the work-product doctrine, the transmittal messages are not. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79

---

[4] None of these documents included the attachments or items which were being transmitted; only the transmittal documents themselves were identified on the privilege log and produced for *in camera* review.

(S.D.N.Y. 2010) ("Transmittal documents themselves are not privileged unless they reveal the client's confidences.").

      With respect to Documents Nos. 1, 3, 5, 7, 8, 12, 15, 16, 17, 21, 24, 29, and 44, Defendants' objection to production is **OVERRULED**, and Defendants are directed to produce these documents to Plaintiffs.

      B.  D<small>OCUMENT</small> N<small>O.</small> 39

      Defendants claim that this document is protected as attorney work-product. With respect to this document, Defendants' objection to production is **OVERRULED**. Document No. 39 is designated on the privilege log as "Exhibit C: inspection report; attorney notes – 5/7/08". The document is two pages long and appears to be an Inspection Report prepared by Building Inspections Underwriters of Penna., Inc. Despite the description on the privilege log which indicates that the document includes attorney notes, an inspection of the same document reveals no notes other than those that appear to be part of the inspection report. Defendants have not highlighted any purported attorney notes nor have they made any other argument regarding which parts, if any, of this document are privileged. As such, Defendants have not met their burden of establishing that work-product doctrine applies, and the Court finds that this document is not entitled to any protection under the attorney work-product doctrine.

      C.  D<small>OCUMENTS</small> N<small>OS.</small> 2, 9, 10, 13, 20, 25, 31, 33, 40, <small>AND</small> 41

      Defendants claim that these documents are protected by attorney-client privilege. With respect to these documents, Defendants' objection is **SUSTAINED**. Based upon the document description in the privilege log, and the Court's review of the documents *in camera*, the preparation of this document involved confidential communication between

Defendants' counsel and Defendants or their agents for the purpose of providing legal assistance to Defendants. There are no circumstances that would justify disclosure of these documents.

    D. DOCUMENTS NOS. 6, 11, 14, 30, 34, 42, AND 43

Defendants claim that these documents are protected by attorney work-product privilege. With respect to these documents, Defendants' objection is **SUSTAINED**. Based upon the document description in the privilege log, and the Court's review of the documents *in camera*, it is clear that these documents constitute opinion work-product, prepared by Defendants' counsel to assist in the defense of this matter, which unquestionably constitutes litigation. Plaintiffs have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

**III.**   **CONCLUSION**

For the foregoing reasons, Defendants' objections to production of the documents described herein shall be **SUSTAINED** in part and **OVERRULED** in part. Defendants are ordered to produce Documents Nos. Nos. 1, 3, 5, 7, 8, 12, 15, 16, 17, 21, 24, 29, 39 and 44, as the Court has found are not shielded from disclosure by attorney-client privilege or the work-product doctrine. Defendants shall produce these documents within fourteen (14) days of the date of the accompanying Order.

An appropriate Order follows.

Dated: **August 20, 2014**
                                     *s/ Karoline Mehalchick*
                                     **KAROLINE MEHALCHICK**
                                     **United States Magistrate Judge**