UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., a/s/o VILLAGE AT CAMELBACK PROPERTY OWNER ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> QUEENSBORO FLOORING CORP., <br><br> Defendants. | CIVIL ACTION NO. 3:10-CV-1559 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

This is a consolidated action concerning property damage and personal injury claims arising out of an explosion and fire in July 2009 that occurred during construction work at a townhouse located in Tannersville, Pennsylvania. Several cases have been consolidated into this one action. The present dispute concerns the parties originally named in *Pozarlik v. Camelback Associates, Inc.*, No. 3:11-CV-1349, which was joined into this consolidated action on March 15, 2012. (Doc. 31). Arkadiusz Piotr Pozarlik and Agnieszka Zofia Pozarlik (the "Plaintiffs"), assert negligence and loss of consortium claims against several defendants, including the Village at Camelback Property Owners Association, Inc., and its property manager, Kathleen Simoncic (together, the "Defendants").

Now before the Court is Plaintiffs' motion for Rule 37 sanctions (Doc. 194). The motion has been fully briefed, and oral argument on both motions was held on March 24, 2015.

In their motion, Plaintiffs request the imposition of sanctions in the form of a default judgment against the Defendants for a variety of transgressions that have violated a total of five

discovery orders and have purportedly continued to transpire even after the Court's July 3, 2014, Order, including failure to timely disclose or produce certain discoverable information or documents, failure to preserve audio and tape recordings, concealment of various discoverable documents, sanitization of various files, and general dilatoriness, lack of candor, and lack of good faith in responding to discovery and in discovery-related motions practice before the Court. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 26(g)(3); Fed. R. Civ. P. 30(d)(2); Fed. R. Civ. P. 37(a); Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 37(c)(1).

This motion addresses several different categories of alleged improper behavior on the part of the Defendants.

**I. CATEGORIES OF DISCOVERY**

  A. KATHLEEN SIMONCIC'S PERSONNEL AND HOME FILE

Plaintiffs recently discovered through the August 12, 2014, deposition of the newly installed President of the Board of Directors John Chironna, and through the October 28, 2014, re-deposition of Kathleen Simoncic, that Simoncic was terminated in 2008 and rehired in 2009 as a result of "misconduct." (Doc. 194, at 10). At this deposition, Chironna revealed that the topic of Simoncic's firing was discussed at a June 14, 2009, board meeting. (Doc. 194-10, at 2). Both Chironna and Simoncic testified at their depositions that any documentation pertaining to Simoncic's firing should be located in her personnel file. (Doc. 194-16, at 6). Simoncic also testified that she maintained a "home" file that contained information pertaining to her unemployment appeals, including certain email correspondence between Simoncic and the Board. (Doc. 194-14, at 3).

Plaintiffs contest that this discoverable information should have been disclosed prior to this Court's July 3, 2014 Order. (Doc. 194, at 9). Specifically, Plaintiffs rely on Simoncic's October 28, 2014, deposition in which she reveals that there was no justification for her failure

to disclose her termination at her December 11, 2013, deposition, Simoncic's affidavit swearing that she made an exhaustive search of all documents requested by Plaintiffs and at all times produced what she had, as well as the board meeting minutes initially produced, which were extensively redacted to omit any reference to the circumstances of Simoncic's termination, as evidence of a pattern of purposeful concealment of documents that support the theory of their case. (Doc. 194, at 9-12). Moreover, Plaintiffs advance the argument that Defendants are presently withholding documents pertaining to Simoncic's firing in 2008 that are referenced in the Board meeting minutes, including "her claim, hearing, denial, and appeal regarding unemployment benefits." (Doc. 194, at 11). Plaintiffs argue that the personnel file produced on August 6, 2013, does not contain said documentation despite Chironna's and Simoncic's assurances that the documents would be located in her file. Moreover, Plaintiffs currently contest that the "home" file produced is an exact copy of the personnel file but with different Bates numbers. (Doc. 224, at 8). Plaintiffs conclude that they were deprived of utilizing these documents in their deposition of Carl Karchner, the maintenance supervisor, which has caused them significant prejudice. (Doc. 224, at 7).

      Defendants offer a number of responses to Plaintiffs' arguments. Defendants argue that Simoncic's termination is not relevant and would not lead to the discovery of more admissible evidence, as other testimony has revealed that she was not terminated for "misconduct," but rather for "political" reasons. (Doc. 201, at 11; Doc. 224, at 11). Nevertheless, Defendants maintain that they have fully complied with this Court's July 3, 2014, Order by producing an additional thousand documents, including unredacted copies of the board minutes for November and December of 2008, and January, February, and March of 2009, and by declaring to Plaintiffs that they produced the entire personnel file on August 6, 2013. (Doc. 224,

at 13). As for the purportedly missing documents, Defendants argue that Chironna and Simoncic merely testified that any documentation relating to Simoncic's termination **should** be located in Simoncic's employment file, and moreover, that Simoncic could not oversee the filing system during that period that her file would have been supplemented with these documents as she was no longer employed with The Village. (Doc. 201, at 12). With respect to Simoncic's "home" file, Defendants cannot explain the disappearance of the e-mail correspondence from the home file, but they assure the Court that if these documents existed they would produce them, given this Court's "substantial" sanction on July 3, 2014. (Doc. 224, at 12).

    B. BOARD MEETING MINUTES WITH ATTACHED DOCUMENTS

On August 1, 2013, this Court entered an Order denying Plaintiffs' motion to compel Defendants to produce all board meeting minutes and attached documentation from August, 2005, to the present, based on Defendants' representation to this court that everything within their possession was produced in response to the initial discovery request. (Doc. 116). However, on September 11, 2014, after prompting from Plaintiffs' counsel, and after this Court's imposition of sanctions on July 3, 2014, Defendants produced Board meeting minutes for November and December of 2008, as well as from January, February, and March 2009. (Doc. 194, at 13).

Plaintiffs now argue that the various documents referenced in the board meeting minutes should be attached to those board meeting minutes, and that the same have been withheld. In response, Defendants submit that all documents in their possession have been produced.

C. EMPLOYMENT/PERSONNEL MANUALS, SECURITY PERSONNEL MANUALS AND JOB DESCRIPTIONS

During the July 28, 2014, depositions of Dave Kalucki and Christopher Travis, maintenance employees for The Village, Plaintiffs discovered that Defendants possessed employment manuals that were distributed to employees upon hire. (Doc. 194-23, at 3; Doc. 194-24, at 3). In response to this deposition testimony, Plaintiffs requested that Defendants produce all employment manuals, handbooks or orientation packages. (Doc. 194-7). On September 2, 2014, Defendants produced the "Administrative Personnel Policies and Practices Manual revised February 1997." (Doc. 194, at 20).

Plaintiffs argue that Defendants misrepresented to the Court in 2013 that they did not possess any employment manuals, handbooks, orientation packages, or job descriptions, only producing some of these documents after Plaintiffs' counsel prompted Defendants to do so in a letter dated August 2014, and after maintenance personnel testified that they received an employment manual. (Doc. 194, at 19). Plaintiffs also argue that Simoncic revealed in her December 11, 2013, deposition that she was in receipt of a job description along with signed acknowledgement form that has not been produced. (Doc. 194, at 22). Plaintiffs assert that they have been subjected to prejudice, as they were "deprived of using these documents [during] the depositions of Simoncic, Karcher, Board members, and [m]aintenance workers." (Doc 194, at 22).

Defendants respond that they first learned of the existence of these manuals when the depositions of Kalucki and Travis were taken on July 28, 2014. (Doc. 224, at 40). Prior to those depositions, Defendants were under the impression that these documents did not exist, as evidenced by the depositions of Chironna, Lewitzky and Glazer, who all testified that they were unaware of the existence of a handbook or employee manual. (Doc. 224, at 40). Defendants

5

assert that when they learned of the existence of these documents, they produced them, including the revised 1997 employment manual, which they maintain is arguably the only employment manual that existed in 2009, as well as a "new" employee handbook that was revised in November of 2013. (Doc 194, at 20). They also concede that all other documents cannot be located.

### D. Unit Owner Complaints

Plaintiffs assert that both Simoncic and Karchner testified in their depositions that various unit owners submitted complaints regarding the unapproved construction work at Unit 298 prior to the explosion on July 22, 2009. (Doc. 194, at 23). Furthermore, Simoncic assured Plaintiffs that she would provide the names and addresses of each of those unit owners who complained. (Doc. 194, at 24). In response to that deposition testimony, Plaintiffs requested copies of those complaints on numerous occasions. However, to date, Plaintiffs have not received these unit-owner complaints, and as such, argue that this amounts to purposeful concealment.

Defendants maintain that the are unable to locate these unit owner complaints. They have produced, however, a work order complaint form labelled "Document 3373." (Doc. 224, at 64).

### E. July 12, 2007 E-mail

Plaintiffs claim that Defendants were instructed to produce the original, individual e-mail correspondence between Simoncic and Lewitzky within ten days of this Court's Order dated November 25, 2014. (Doc. 194, at 24).However, Plaintiffs assert that Defendants only produced the third page of the document on the tenth day in violation of the Order. (Doc. 194, at 27). Upon prompting from Plaintiffs, Defendants produced the first two pages of the document twenty-one days after this Court's Order. Attached to the three pages of e-mail

6

correspondence was a photograph that Plaintiffs claim was previously disguised as attorney work product submitted for in camera review. (Doc. 194, at 27-28).

Defendants assert that they were unsure if the photograph submitted for in camera review was actually the photograph originally attached to the e-mail. (Doc. 194-33, at 2). Nevertheless, they argue in response that this Court has previously resolved these disputes with respect to the e-mail and photograph. (Doc. 201, at 15).

F. TAPE RECORDING

In their present motion, Plaintiffs reiterate the argument made in their third motion for sanctions with respect to a lost audio tape recording audio recording which contained the interviews of several employees of the property owners association describing the incident the day after the explosion. (Doc. 162). This Court addressed the missing audiotape in its July 3, 2014 Order, noting that "[w]hatever the present disposition of the tape, it is clear to the Court that the Defendants violated their fundamental duty to preserve relevant evidence when they failed to retain the tape," and granting Plaintiff's motion with respect to the missing tape recording. (Doc. 175). Plaintiffs now argue in the instant motion that they have acquired evidence of prejudice stemming from the lost audio tape recording; namely testimony from the employees interviewed that their memories have faded with respect to the contents of the audio recording. (Doc. 194, at 31).

The Defendants have consistently responded that they did not possess the tape. (Doc. 145-17; Doc. 145-18; Doc. 145-21, at 62; Doc. 145-23, at 2; Doc. 145-34; Doc. 145-36; Doc. 160-24; Doc. 164-9; Doc. 164-13). At oral argument, counsel for the Defendants reiterated their representation that the tape was not presently in their possession, custody or control. Defendants also argue that Plaintiffs have not suffered prejudice because all employees who

7

made statements on the audiotape have been deposed by Plaintiffs. (Doc. 201, at 15-16). Moreover, Defendants claim that "[t]here is nothing else on the tape that would reflect anything about what the Association did, did not do, or should have done with reference to avoiding the accident, which is the crux of Plaintiffs' case." (Doc. 224, at 24).

### G. Security Footage

Through Simoncic's October 28, 2014 deposition, Plaintiffs discovered the existence of a video camera at the entry gate of The Village. Plaintiffs argue that the security camera captured footage of Defendants entering and leaving the premises the day of the explosion. (Doc. 194, at 32). Plaintiffs further argue that Defendants failed to preserve the security tape footage after the explosion, which is "an extremely important piece of discovery which the Village . . . and property manager should have kept and preserved, because it would have identified these unsafe and unqualified workers . . . coming on and off of the property." (Doc. 224, at 67).

Defendants argue that the security tape overrides itself every thirty days (Doc. 224, at 68), and that representatives for the Plaintiffs, arriving immediately after the explosion, could have requested the preservation of the video within that time before the video was taped over. (Doc. 224, at 68). Defendants also argue that there is no dispute as to who would have gone through the security entrance because only certain designated contractors were given keycards by unit owners themselves. (Doc. 224, at 70).

### H. 298 Overlook Way File

Plaintiffs argue that the 298 Overlook Way file has been sanitized. (Doc. 194, at 32). Plaintiffs arrive at that conclusion by comparing the 298 Overlook Way file with John Lewitzky's homeowner file that was produced on October 22, 2014. (Doc. 194, at 33). Lewitsky's file purportedly contains various original e-mails, complaints, and motions to the Board, which are not found in the 298 Overlook Way File. At oral argument, counsel for the

Plaintiffs acknowledged that there was a discrepancy between the contents of the 298 Overlook Way file produced as a separate production in accordance with this Court's July 3, 2014 Order, and the contents reviewed when counsel for the Plaintiffs inspected the 298 Overlook Way file at the office of counsel for the Defendants. (Doc. 224, at 18).

Defendants maintain that they produced the entire file in accordance with his Court's July 3, 2014, Order.

## II. DEFAULT JUDGMENT

As a sanction for the alleged misconduct of the Defendants and their counsel, Plaintiffs request that this Court enter a default judgment against Defendants. Under Rule 37 of the Federal Rules of Civil Procedure, a district court may impose sanctions on a party that fails to comply with an order compelling discovery. Fed.R.Civ.P. 37(b)(2). "Dismissal under Fed.R.Civ.P. 27 is a matter for the discretion of the district court." *Curtis T. Bedwell & Sons, Inc., v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 691 (3d Cir. 1988)(citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)(per curium)). The sanction of dismissal, however, "is disfavored absent the most egregious circumstances." *U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir. 2003)(citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984).Where the proposed sanctions include dismissal with prejudice, entry of default judgment, or the preclusion of claims or defenses, the exercise of that discretion is governed by six factors originally enumerated by the Third Circuit Court of Appeals in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). *Knoll v. City of Allentown*, 707 F.3d 406, 409-10 (3d Cir. 2013). These factors include:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history of dilatoriness*; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than

9

>dismissal[, default judgment, or preclusion or claims or defenses], which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis added). "In balancing the *Poulis* factors, there is no 'magic formula' or 'mechanical calculation' to determine how they are considered." *Miles v. Elliot*, No. 94-4669, 2011 WL 857320, at *4 (E.D. Pa. Mar. 10, 2011) (citing *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008). "Although each factor need not be satisfied for the trial court to dismiss a claim [or entry of default], any and all doubts should be resolved in favor of reaching a decision on the merits." *Wirerope Works, Inc. v. Travelers Excess & Surplus Lines Co.*, No. 07-169, 2008 WL 2073375, at *3 (E.D. Pa. May 12, 2008) (citing *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003); *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988); *Emerson v. Thiel College,* 296 F.3d 184, 190 (3d Cir.2002), *Adams v. Trustees of the N.J. Brewery Emps. Pension Trust Fund,* 29 F.3d 863, 870 (3d Cir.1994)). Examples of cases where default judgement was entered include: *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (reversing the Third Circuit in holding that the district court did not abuse its discretion in dismissing a complaint under Rule 37 where the district court found that plaintiff demonstrated "flagrant bad faith" amounting to a "callous disregard" of his responsibilities); *Mindek v. Rigatti*, 964 F.2d 1369 (3d. Cir. 1992)(upholding the district court's entry of default judgment where litigant "flagrantly" violated court orders); and *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.* 843 F.2d 683 (1988) (holding that the district court did not abuse its discretion in excluding damages evidence at trial where plaintiff repeatedly failed to comply with discovery orders and produced unsupported damages evidence one week before trial).

The Court has considered each of the six *Poulis* factors, but finds the second, fourth, and sixth factors to be dispositive. Due to the limited prejudice caused by the Defendants' conduct,

10

the failure to establish that Defendants engaged in contumacious behavior, the exhibited effort on the part of the Defendants to comply with this Court's July 3, 2014, Order, and the meritoriousness of the claims and defenses in this case, this Court will decline to enter default judgment against Defendants.

### A. PREJUDICE

Under the second *Poulis* factor, "the Court examines the prejudice to other parties caused by the delay, including considering whether the party's conduct has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" *Chiarulli v. Taylor*, No. CIV 08-4400 JBS/AMD, 2010 WL 1371944, at *3 (D.N.J. Mar. 31, 2010) *report and recommendation adopted,* No. CIV08-4400 JBS/AMD, 2010 WL 1566316 (D.N.J. Apr. 16, 2010) (quoting *Huertas v. City of Philadelphia,* No. Civ. A. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005), *aff'd,* 139 Fed. Appx. 444 (3d Cir.), *cert. denied,* 546 U.S. 1076 (2005)). "The Third Circuit has given the following examples of prejudice to the opposing party: 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Bortex Indus. Co. Ltd. V. Fiber Optic Designs, Inc.*, 296 F.R.D. 373, 385 (E.D. Pa. 2013)(quoting *Adams*, 29 F.3d at 873-74 (internal citations and quotations omitted)). "[T]here are varying degrees of prejudice, and courts should consider the degree of prejudice that the defendants suffered accordingly when conducting the balancing of the *Poulis* factors." *Briscoe*, 538 F.3d at 260 n.3.

Plaintiffs present several arguments in support of their position that they have suffered irreparable harm warranting a default judgment in their favor. Among those arguments are that: Plaintiffs have incurred significant costs in obtaining court orders to compel Defendants to

comply with discovery requests; Plaintiffs have been deprived of utilizing certain withheld documentation at depositions, which has hindered their ability to prepare for trial; Plaintiffs have been prevented from viewing the destroyed security tape, which could have contained footage supporting the theory of their case; and Plaintiffs have obtained evidence of dimming witness memories from the testimony of employee witnesses who cannot recall with detail the contents of the recorded witness statements taken immediately after the explosion.

Although the conduct of Defendants throughout discovery has prejudiced Plaintiffs to some degree, "[P]laintiff[s] ha[ve] not shown that [Defendants' conduct] deprived [them] of evidence necessary to make [their] case against defendants" such that default judgment should be entered against Defendants. *Miles*, 2011 WL 857320, at *4. Specifically, this Court has previously addressed the additional time and money consumed in developing the case for trial it in its July 3, 2014, Order, awarding up to $1500 in reasonable expenses and attorney fees incurred in connection with the oral argument on Plaintiffs' third motion for sanctions, and awarding reasonable expenses and attorney fees incurred from redeposing Simoncic and deposing Klucki, Travis, Cruz and Hilbert. (Doc. 175). Moreover, Plaintiffs' alleged inability to utilize certain documentation during its depositions is an unavailing argument, as Plaintiffs acknowledged that they could have redeposed certain individuals after obtaining the requested documentation. (Doc. 224, at 14). While the potential for prejudice is more tangible with respect to the destroyed security footage, Plaintiffs have failed to establish to the Court's satisfaction how the preservation of this security footage would ultimately impact the

presentation of their case, especially if they pursue the available discovery tools provided to them by the federal rules.[1]

The Court also has difficulty accepting the argument of Plaintiffs that they have been caused any additional, significant prejudice with respect to the lost audio recording beyond that which this Court already resolved in its July 3, 2014, Order; namely, that "these recorded witness statements may have assisted the [Plaintiffs] in impeaching later contradictory testimony or refreshing the recollection of witnesses whose memories had dimmed in the intervening five years that this litigation has been pending." (Doc. 175). This Court is also hard pressed to find prejudice where Defendants have produced over three thousand documents to Plaintiffs, including an additional thousand documents since this Court's July 3, 2014 Order. (Doc. 224, at 103). Therefore, this Court finds that this *Poulis* factor weighs against entry of default judgment.

### B. WILLFUL OR BAD FAITH CONDUCT

"In assessing whether a party's conduct was willful, courts often look for evidence of intentional or self-serving behavior that indicates flagrant bad faith." *Bortex*, 296 F.R.D. at 387. The "[a]bsence of reasonable excuses may suggest that the conduct was willful or in bad faith." *Roman v. City of Reading*, 121 Fed.Appx. 955, 960 (3d. Cir. 2005). "If the conduct is merely negligent or inadvertent," the conduct will not be deemed contumacious. *Briscoe*, 538 F.3d at 262.

---

[1] The Court is also persuaded by the testimony of Defendants' counsel at oral argument that the security footage was automatically erased by Vector, a third-party security company. While Defendants were obligated to preserve potential evidence in light of anticipated litigation, it appears to this Court that the destruction of this evidence was not within the control of Defendants.

Here, Plaintiffs submit an outline of the parties' overdrawn procedural history in support of their argument that there is a pattern of bad faith with respect to complying with five Court orders, adhering to deadlines, and producing complete documents. Plaintiffs argue that this pattern of behavior evidences active concealment and sanitization. At the outset, this Court notes that to the extent Plaintiffs seek to reiterate arguments made in previous motions with respect to this "ongoing" behavior, this Court will not consider these arguments, as it has already significantly sanctioned Defendants for their discovery conduct prior to this Court's July 3, 2014, Order. Accordingly, this Court only considers alleged incidents of bad faith and willful misconduct since this Court's most recent Order.

Upon review of the facts alleged in the recent motion, it appears the crux of Plaintiffs' argument is that Defendants assured Plaintiffs they would produce certain documents in compliance with their discovery obligations only to later inform Plaintiffs, after receiving numerous notices of noncompliance from Plaintiffs, that they were either mistaken about the existence of those documents, or alternatively, that those documents have already been produced, albeit incompletely. For example, Plaintiffs offer as evidence Defendants' failure to produce Simoncic's job description with the corresponding acknowledgment form despite her assurances that she was in receipt of such forms as well as the homeowner complaint forms that Simoncic testified existed. Plaintiffs also point to Defendants' failure to timely produce the email correspondence between Simoncic and the Board within ten days of the entry of this Court's November 25 , 2014, Order. (Doc. 193).

In considering the arguments presented at oral argument and in the parties' briefs, this Court finds that Plaintiff has failed to submit "sufficient evidence to establish that [D]efendants acted 'with the purpose to delay the proceedings' or that they 'willfully' failed to comply with

their discovery obligations." *Miles*, 2011 WL 857320, at *4. Rather, it appears that Defendants' conduct amounts to no more than negligent behavior, especially given counsel for Defendants' acknowledgement at oral argument that her clients are a "nonprofit corporation [that] works through its members. The members changed. . . Who [she] talked to today weren't the same people who were involved in the rescue mission after the fire. . . . [T]hese people don't know what they have and don't have." (Doc. 224, p. 45). While this Court can appreciate the frustration that accompanies discovery disputes of this nature, the Court reminds Plaintiffs that inconsistent statements concerning the existence or nonexistence of certain documents can be used as a mechanism for impeachment at trial. Moreover, this Court is persuaded by the efforts made by Defendants to produce all requested documents since the imposition of substantial sanctions and a formal reprimand on July 3, 2014. (Doc. 175). Accordingly, this factor weighs against imposition of case-dispositive sanctions at this time.

### C. THE MERITORIOUSNESS OF THE CLAIM

When assessing the meritoriousness of a claim, the district court "generally appl[ies] the standard used for a 12(b)(6) motion to dismiss." *Bortex Indus. Co. Ltd.*, 296 F.R.D. at 388 (citing *Briscoe*, 538 F.3d at 263). A claim will be determined meritorious if the allegations in the pleadings "support recovery by plaintiff or would constitute a complete defense" if presented at trial. *Poulis*, 747 F.2d at 869-70. Viewing the facts alleged in the light most favorable to Defendants, it does not appear that the Defendants' asserted defenses are without merit. Moreover, this Court is mindful of the fact that default judgments are disfavored and decisions on the merits are preferred. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.1984)). Accordingly, this factor weighs heavily against entry of default judgment.

### III. CONCLUSION

Guided by the Third Circuit's admonition that entry of default "must be a sanction of last, not first resort," this Court finds the entry of default judgment to be inappropriate in this case. *Poulis*, 747 F.2d at 869.

An appropriate Order will follow.


**Dated: April 6, 2015**                                                         *s/ Karoline Mehalchick*
                                                                                                   **KAROLINE MEHALCHICK**
                                                                                                   **United States Magistrate Judge**