## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

COMMUNITY ASSOCIATION
UNDERWRITERS OF AMERICA, INC.,
a/s/o VILLAGE AT CAMELBACK
PROPERTY OWNER ASSOCIATION,
et al.,

                 Plaintiffs,

     v.

QUEENSBORO FLOORING CORP.,
et al.,

                 Defendants.

CIVIL ACTION NO. 3:10-CV-01559

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

### I.  BACKGROUND

This is a consolidated action concerning property damage and personal injury claims arising out of an explosion and fire in July of 2009 that occurred during construction work at a townhouse located in Tannersville, Pennsylvania.[1] The parties have filed a number of motions in limine in advance of trial in this matter, and the Court now addresses several of those motions.[2]

---

[1] Another case, *Pozarlik v. Camelback Associates, Inc.*, No. 3:11-CV-1349, was consolidated into this action on March 15, 2012. (Doc. 31).

[2] In reviewing the motions in limine presently before the Court, it appears that the parties have relied extensively on Pennsylvania case law and the Pennsylvania Rules of Evidence to advance their arguments in support of and in opposition to the admission of certain evidence. To the extent that the parties imply that the Pennsylvania Rules of Evidence should apply here, the Court reminds the parties that the **Federal Rules of Evidence control**, since these motions "involve[ ] admission of evidence in a federal court" and furthermore, do not

## II.  DISCUSSION

### A.  LEGAL STANDARDS

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions in limine prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (noting that the court exercises its discretion to rule in limine on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions in limine, which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings [on motions in limine] are subject to the trial judge's discretion and are therefore reviewed only for abuse of

invoke those limited Federal Rules of Evidence that expressly yield to state law. *Rolick v. Collins Pine Co.*, 975 F.2d 1009, 1013 (3d Cir. 1992); *Forrest v. Beloit Corp.*, 424 F.3d 344, 354 (3d Cir. 2005) ("The admissibility of the evidence ultimately turns on a balancing of its probative value versus its prejudicial effect, and we have held that in a federal court the Federal Rules of Evidence govern procedural issues of this nature."); *Diehl v. Blaw–Knox*, 360 F.3d 426, 431 n. 3 (3d Cir. 2004) (noting in product liability diversity action governed by Pennsylvania law that "assessment of the dangers of unfair prejudice and confusion of the issues are *procedural* matters that govern in a federal court notwithstanding a state policy to the contrary") (emphasis added); *Kelly v. Crown Equip. Co.,* 970 F.2d 1273, 1277–78 (3d Cir.1992) (finding that the relevancy provision in Federal Rules of Evidence is "arguably procedural" and therefore governs in diversity action notwithstanding contrary Pennsylvania law).

discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir.1995) (citations omitted)); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir.1994) (reviewing in limine rulings for abuse of discretion).

The Federal Rules of Evidence provide that relevant evidence is generally admissible.[3] Fed. R. Evid. 402. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The balancing test under Rule 403 provides as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

> Fed. R. Evid. 403.

In keeping with this framework, the Court turns to each of the motions in limine filed by the parties.

---

[3] The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *3 (M.D. Pa. Feb. 5, 2016). The grounds for exclusion of evidence under Rule 403 are described as an exception to the general rule favoring admission of relevant evidence, and by permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, the Court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission. *Id.*

B. Evidence of the Firing, Unemployment, and Rehiring of Defendant Kathleen Simoncic

Defendants, the Village at Camelback Property Owners Association, Inc., and its property manager, Kathleen Simoncic (collectively, the "Association Defendants"), have filed a motion in limine (Doc. 298) seeking to preclude any evidence of the firing, unemployment, and rehiring of Defendant Kathleen Simoncic. Specifically, the Association Defendants seek to preclude this evidence on the basis that it is irrelevant and highly prejudicial. Plaintiffs submit that Simoncic's credibility is central to this case, including her false certification of the Association Defendant's answers to interrogatories and requests for documents, her inconsistent testimony regarding her knowledge of the illegal work being performed at Unit #298, and her failure to preserve evidence. (Doc. 375).

It is undisputed that Simoncic was fired by the Board of Directors in December 2008, and rehired in June 2009. The Association Defendants submit that there is no documentary evidence or testimony that Simoncic was fired for any alleged mishandling of Unit #298, and that the testimony of the board members involved in the actual firing in December 2008 established that Simoncic was not fired because of her handling of Unit #298.

Although Plaintiffs submit a number of documents in opposition to the Association Defendants' motion in limine, the deposition testimony of the board members do not demonstrate that Simoncic was fired for her handling of issues at Unit #298. First, Plaintiffs submit excerpts from the deposition of John Lewitzky, a board member of the Association at the time of Simoncic's termination. Lewitzky specifically testified as follows:

Q:     Can you tell me why Kathleen was fired?

A:     Because she didn't take the employee contributions out of their health insurance.

…

Q:     Did her firing have anything to do with her handling of 298?

A:     No.

Q:     Did her firing have anything to do with what she testified to or did or didn't do with reference to the litigation between the Association and Chemov?

A:     No.  It had nothing to do with that.

Q:     Did her firing have anything to do with her relation or dealings with the owners of 298 Overlook Way?

A:     No.

…

Q:     Okay. In this litigation, it has somehow come up that perhaps Ms. Simoncic as fired because of the handling of 298 Overlook Way. Is that true?

A:     That's not true.

(Doc. 375-3).

Plaintiffs further rely on the deposition testimony of Howard Glazer, who testified in the

following manner:

Q:     Okay. And it appears from this e-mail that Mr. Lewitzky was concerned that Kathleen Simoncic and management failed to oversee this construction that was being performed at 298 Overlook Way; is that fair to say?

A:     Yes. But that was not an accurate perception.

Q:     All right.

A:     She was most aggressive in bringing it to the rest of our attention and getting whatever response we got, was due to her. She did a beautiful job.

Glazer further testified that the inspection of the construction was more the responsibility of

Carl [Karchner] than Kathleen's:

Q:     Okay. All right. Was it the responsibility of Kathleen Simoncic and management

to monitor this type of construction that was going on at 298 Overlook Way?

A:     No, I would say more under Carl's rubric of responsibility than under Kathleen's.

(Doc. 375-5).

Plaintiffs also refer to Simoncic's unemployment file, which simply indicates that Simoncic was separated for "misconduct and poor performance" and includes a description of the problems related to the health insurance premiums, and a series of emails related to issues including Christmas lights, parking situations, trash bags, ice, responsiveness to emails, flags, and broken glass. There is simply nothing in the file that relates in any way to Unit #298. (Doc. 375-6). Plaintiffs also submit a copy of the resignation letter of several board members (Doc. 375-7), a Concerned Owners' Letter (Doc. 375-8), excerpts from the deposition of John Chironna (Doc. 375-9), and excerpts from the deposition of Kathleen Simoncic (Doc. 375-10). None of these exhibits reference the reason for terminating Ms. Simoncic. Indeed, the Concerned Owners' Letter indicates that "she was doing a good job" and the letter from the board members does not reference Simoncic or the position of Property Manager at all.

Finally, Plaintiffs rely on the deposition of Edward Zehfuss, Defendants' proffered liability expert, who testified as follows at his deposition:

Q:     Okay. And what was your understanding of why Ms. Simoncic was fired?

A:     Primarily cost, they found somebody to do it cheaper.

Q:     Okay. And do you know – do you know whether Ms. Simoncic was fired because of not overseeing the construction work that was being performed at 298 Overlook Way by Chernovs and the workmen?

A:     I know that was an issue that this particular Board member had raised. I don't know whether other people supported that or not.

…

Q:     So you recall reading some information that Mr. Lewitzky did not want to re-hire Ms. Simoncic because of the problems associated with her overseeing the work at 298 Overlook Way?

A:     Right. It wasn't the explosion itself, but the construction, yes.

(Doc. 375-4).

Notably, Zehfuss testified that while there was "an issue that this particular Board member raised" it related to overseeing construction work, and not the explosion at issue in this case.

Additionally, the reports of Plaintiffs' proffered experts, Patrick McGinley (Doc. 298-19 at 3), Robert Illo (Doc. 298-20 at 4), and Charles Graziano (Doc. 298-21 at 3), all indicate that they relied upon board meeting minutes regarding the firing of Kathleen Simoncic, but do not reference the firing in any of their findings. Further, the reports do not specify what board meeting minutes were relied upon by the experts in reaching their findings. Although Plaintiffs submit that the Association Defendants withheld the Board Meeting minutes that should have been produced in discovery, and while it does appear that these documents may have been disclosed in an untimely fashion, and after one of the several orders on motions for sanctions in this case, it is evident that Plaintiffs' experts had the board meeting minutes available to them.

The Court finds that the circumstances surrounding Simoncic's hiring, firing, and unemployment are irrelevant to the issues in this case; namely, who is liable for the property damage and personal injury claims arising out of an explosion and fire in July 2009 that occurred during construction work at the subject townhouse. Even if it were relevant, allowing evidence of Simoncic's hiring, firing, and unemployment would likely confuse the issues in this case, and cause unfair prejudice to the Association Defendants. Further, the Court finds that this evidence is not needed to impeach or otherwise attack the credibility of Simoncic. For these reasons, the Association Defendants' motion in limine (Doc. 298) seeking to preclude any evidence of the firing, unemployment, and rehiring of Defendant, Kathleen Simoncic, is **GRANTED**.

C. <u>OUT-OF-COURT STATEMENT BY POZARLIK THAT HE SMELLED GAS</u>

Plaintiffs Arkadiusz Piotr Pozarlik and Agnieszka Zofia Pozarlik (collectively referred to as the "Plaintiffs") have filed three motions in limine (Doc. 329; Doc. 331; Doc. 333), seeking to exclude from evidence as inadmissible hearsay a statement that Plaintiff smelled gas prior to the explosion. That statement was purportedly made through a number of interpreters; namely, Katarzyna Kacprzak, who translated for Plaintiff Pozarlik during the state police interview, and arguably one unidentified translator who was likely supplied by the hospital to offer translation services to Plaintiff Pozarlik. These translators communicated to various witnesses on behalf of the Plaintiff, and the disputed statement itself has appeared in a police report, a FirstComp Insurance form, and throughout Plaintiff's medical record. Upon review of the three motions in limine, the Court, in the interest of efficiency, has categorized its analysis into what it deems to be the overarching arguments raised by the parties rather than by motion in limine addressing each of the respective documents that contain the disputed statement. In so doing, and in considering the parties arguments on this matter, the Court will **DENY** Plaintiffs' motions in limine (Doc. 329; Doc. 331; Doc. 333) and reserves the right to readdress these arguments at trial upon the Plaintiffs raising any appropriate objections they may have at that time.

### 1. The Association Defendants' objection that the statement is non-hearsay

The Association Defendants' primary objection to these motions is that the statement of Plaintiff Pozarlik, purportedly made through interpreters and contained in these three documents, is not hearsay because the Association Defendants do not intend to offer it to prove the truth of the matter asserted, but rather, for the purpose of proving that Plaintiff "perceived the dangers, started his sanding machines and continued to sand." (Doc. 365, at 34).

The Association Defendants' position—that they intend to offer the statement, not to prove the truth of the matter asserted (i.e. the existence of the gas in the air or that Plaintiff

actually smelled gas), but rather to infer something other than the matter asserted; namely, to show that Plaintiff perceived a danger prior to beginning his construction work that day, and continued on in the face of that perceived danger—is persuasive. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Conversely, an out-of-court statement may be introduced, and will not be considered hearsay, if it is offered as circumstantial evidence of the declarant's state of mind. Thus, if the statement is offered to prove that Plaintiff smelled gas in the air, or to prove that a gas leak existed, such a statement would be hearsay and could only be offered into evidence if an exemption or exception to the hearsay rule applied. However, if the statement is offered to circumstantially show Plaintiff's state of mind or alternatively, to show Plaintiff was aware of a general risk of danger, the probative value of the statement does not necessarily depend on the existence of the assumed fact it implies. Indeed, in such a situation, the statement that circumstantially proves state of mind—here, Plaintiff's perceived risk of danger and his decision to disregard that risk and continue on in the face of that risk—may not be hearsay because the statement is arguably not offered to prove the fact it describes—here, that Plaintiff actually smelled gas or that there existed an actual gas leak.

Although it is conceivable that the statement itself may be considered non-hearsay, the Court will reserve its judgment on this matter at this time, as the admissibility of the statement as non-hearsay depends upon how it is introduced and for what purpose it is introduced. Such a determination cannot be made in a vacuum, but rather, requires that the Court fully evaluate in each individual instance how the statement is being offered in the context of trial. Deferring judgment on this matter will enable the Court to fully inquire into whether the testimony at

hand is actually elicited for its inherent truth, at which point, it may then entertain arguments as to whether such a statement falls within an exemption or exception to the hearsay rule. Accordingly, the Court defers its ruling with respect to the Association Defendants' response to Plaintiffs' hearsay objections, and will permit Plaintiffs to renew any objections they may have to the attempted introduction of this statement at that time. [4]

### 2. Plaintiffs' argument that the statement is hearsay and does not fall within the exemption to the hearsay rule for opposing-party admissions

While the Court has determined that it will address these arguments made in the motions in limine at trial, the Court believes it would be helpful to the parties to consider a particular argument made by Plaintiffs, i.e., that should the Court find at trial that the statement is deemed hearsay, such a statement would not be exempted from the hearsay rule under Federal Rule of Evidence 801(d)(2). The crux of Plaintiffs' challenge in their motions in limine is that the interpreters providing translation services are inherently unreliable and should not be attributed to the Plaintiff as his own statement because the translation was inaccurate. [5]

It is well established that an out-of-court statement offered to prove the truth of the matter asserted is hearsay and generally inadmissible. Fed.R.Evid. 802. However, a party may

---

[4] Plaintiffs may also raise objections pertaining to the weight of the evidence, such as relevance and unfair prejudice, at the time of trial and further, may request a limiting instruction if it is warranted.

[5] This argument also bleeds into Plaintiffs' overall contention that the Plaintiff Arkadiusz Pozarlik's poor cognitive status, the language barrier requiring that he communicate through an interpreter, the circumstances of how these statements were acquired, as well as the fact that the records themselves are devoid of any indication of the identity of the person who originally authored them, all weigh against admission of the statement, as the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly providing cumulative evidence. Again, such contentions are more properly raised at trial.

introduce the out-of-court statements of his opponent as party admissions. Fed.R.Evid. 801(d)(2).[6] The question presented in this context then is whether statements made by a party-opponent translated through a foreign language interpreter into a language understood by a witness, are admissible as a party admission. The Third Circuit Court of Appeals has yet to address the issue of the admissibility of translated or interpreted statements. In reviewing the decisions of other circuit courts of appeals, however, courts generally characterize the interpreter as either an agent of the party or an individual otherwise authorized to speak on the party's behalf; hence, the translation is attributable to the party as his own admission and is properly characterized as an exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(C)-(D); *see also United States v. Alvarez*, 755 F.2d 830, 860 (11th Cir. 1985) (finding that a witness's in-court testimony of an interpreter's out-of-court oral translations of the defendant's statements are

---

[6] The FirstComp insurance form presents the Court with a slightly different problem. While Plaintiffs argue that this form was filled out by an unknown individual and thus, cannot be deemed an opposing party's admission, Plaintiffs overlook the fact that the form, regardless of who filled it out, **contains the signature of the Plaintiff.** This is an important distinction, as a "signed statement, even if written by another in another's words, would be adopted as the party's own if he signed it, because signing is a manifestation of adopting the statement." *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002); *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 930 (3d Cir. 1985) ("[T]he [r]ecords were filled out by several different people, most likely officials of the shipping companies employing [plaintiff]. This shifts our inquiry to Rule 801(d)(2)(B), adoptive admissions, but the result is the same for we believe that [plaintiff's] signature on each of the cards is an unequivocal adoption of the contents therein.")(citing *United States v. Smith,* 609 F.2d 1294, 1301 n. 7 (9th Cir.1979) (records containing defendant's signature "may more appropriately be regarded as non-hearsay admissions under Fed.R.Evid. 801(d)(2)(A) and 801(d)(2)(B)"). Thus the statement contained within this record, if offered to prove the truth of the matter asserted, would be regarded as a non-hearsay admission under Federal Rule of Evidence 801(d)(2)(B).

admissible as exempted under Federal Rules of Evidence 801(d)(2)(C) or (D) but not admitting the statements as the defendant's own statements under Rule 801(d)(2)(A).

Along that vein, various courts utilize a "language conduit" theory in conjunction with or in lieu of the agency theory to support the admission of statements made through an interpreter as a party-opponent's statements. *United States v. Martinez–Gaytan*, 213 F.3d 890 (5th Cir. 2000) ("Except 'in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay.'"); *United States v. Da Silva*, 725 F.2d 828, 831 (2d Cir. 1983); *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) ("[A]n interpreter is 'no more than a language conduit and therefore his translation [does] not create an additional level of hearsay.'" (*quoting United States v. Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989) (alteration in original))). On the whole, federal circuits presume the admissibility of translated statements that are otherwise admissible, provided however, that there is no showing of unreliability or a motive to mislead. *Germano v. Int'l Profit Ass'n, Inc.*, 544 F.3d 798, 802-03 (7th Cir. 2008); *see United States v. Da Silva*, 725 F.2d 828 (2d Cir. 1983) (treating the interpreter as a "language conduit" of the defendant for hearsay purposes and therefore finding interpreter to be an agent of the defendant because interpreter "has a sufficient capacity, and there is no motive to misrepresent"); *United States v. Beltran*, 761 F.2d 1, 9 (1st Cir.1985); *Alvarez*, 755 F.2d at 859–60. Indeed, to that end, many circuits will employ a four-factor test to check for likely bias or unreliability on a case-by-case basis. *See United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991); *United States v. Martinez–Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000). Specifically, such courts consider: "[1] which party supplied the interpreter, [2] whether the interpreter had any motive to mislead or distort, [3] the interpreter's qualifications

and language skill, and [4] whether actions taken subsequent to the conversation were consistent with the statements as translated." *Nazemian*, 948 F.2d at 527 (enumeration added).

Here, Plaintiffs repeatedly argue in favor of precluding the out-of-court statement made through interpreters that Plaintiff Pozarlik smelled gas prior to beginning his construction work, because there is no way to insure the guarantees of trustworthiness of the translation. In reviewing the available case law, the Court finds that in this specific case, there is no showing of unreliability or a motive to mislead, which would suggest that such testimony be excluded in its entirety. First, neither party supplied the interpreter(s) providing the translation services. Second, the Plaintiffs do not identify whether these interpreters would have any motive to mislead or distort Plaintiff's communications with them. Quite the contrary, the interpreter(s) supplied by the hospital in order to aid medical personnel in diagnosing and providing Plaintiff with medical treatment for his injuries would have had little reason to misrepresent his statements, as the incentive for truthfulness is bolstered by the fact that these interpreters were employed to advocate on the patient's behalf.   Moreover, it does not appear from the deposition testimony offered by Katarzyna Kacprzak, that she would have any motive to misrepresent Plaintiff's statements. Third, Katarzyna Kacprzak testified that she had translated for Mr. Dearie, the attorney she worked for, on various occasions prior to her interview with Plaintiff Pozarlik in January of 2010. (Doc. 276-24, at 4). Furthermore, Plaintiffs do not contest that any professional medical interpreter provided by the hospital and assigned to provide translation services to Plaintiff Pozarlik would not have possessed the qualifications and language skills necessary to communicate Plaintiff Pozarlik's healthcare needs at the time. Fourth, there are no indications that the actions taken after the translated conversations were not consistent with the translations. While the Court recognizes that the circumstances of the

translations, at least with respect to the interview conducted with Katarzyna Kacprzak, may not have been ideal, it emphasizes that any inconsistencies or inaccuracies in how the statements were translated may be addressed by placing the interpreter or Plaintiff Pozarlik on the stand to testify.

However, as stated above, the Court will reserve any judgment with respect to whether this particular exemption of the hearsay rule applies until it is called upon to do so at trial. [7]

### 3. Plaintiffs' argument that the documents containing the statement are inadmissible hearsay

To add an additional wrinkle to this analysis, Plaintiffs appear to request that the Court preclude the admission of the police report and the medical records containing the reference

---

[7] The Court further notes that the other arguments raised by the Association Defendants for permitting testimony and references to the statement at trial should the Court find the statement to be hearsay also have potential merit. Indeed, as suggested by the Association Defendants, the parties are free to use this testimony for purposes of impeachment. Moreover, the Court finds availing the exception to the hearsay rule for statements made for a medical diagnosis or treatment provided by Federal Rule of Evidence 803(4), which requires that the statement be "made for—and reasonably pertinent to—medical diagnosis or treatment" and that the statement "describe medical history; past or present symptoms or sensations; their inception; or their general cause." F.R.E. 803(4). Here, as acknowledged by the Plaintiffs, the author of the statement at issue in the medical record, Leah Rosen, a social worker, included the statement for the purpose of "treat[ing] and diagnos[ing] [Planitiff] Pozarlik's medical conditions, not to investigate and document how the explosion occurred." (Doc. 331, at 4). To that end, the Federal Rules of Evidence permit the statement to be made to "hospital attendants, ambulance drivers, or even members of the family." Fed. R. Evid. 803(4), Advisory Committee Notes, "Note to Paragraph (4)." Furthermore, the statement, arguably made by the interpreter on Plaintiff's behalf to medical personnel, appears to describe the "general cause" of the Plaintiff's injuries, as opposed to opining as to who was at fault for his injuries, which would not qualify under this exception. See, e.g., Leinberry v. Anes Elecs., Inc., No. CIV. 90-4574, 1992 WL 38382, at *4 (E.D. Pa. Feb. 24, 1992) (noting that "the statement from the notes that '[w]hen she was opening door—a car struck her' would be admissible as a description of cause pertinent to diagnosis and treatment," but concluding that the statement that "'the driver [was] in his '70's—had his steering wheel locked' provides information that is utterly irrelevant to the diagnosis and treatment of [declarant]'").

that Plaintiff smelled gas in the air on the day of the explosion. In support of this argument, Plaintiffs maintain that the records themselves, constituting one level of hearsay, do not fall within an exception to the hearsay rule, such as the business records exception provided by Federal Rule of Evidence 803(6), or the public records exception provided by Federal Rule of Evidence 803(8). (Doc. 332, at 16-17).

While it is a matter of conjecture at this point as to how such testimony will be introduced, it bears noting that, to the extent that any party intends to introduce into evidence these records, they will be faced with a hearsay problem.[8]  With respect to the medical records, it is clear that hospital records, being a compilation of written accounts of acts, narrations, and observations of various individuals, which are offered to prove the truth of the matters asserted therein, constitute hearsay. The primary mechanism through which these records could be accepted into evidence is through a showing that they fall within Federal Rule of Evidence 803(6). In order for these records to be properly introduced into evidence under this exception, a proper foundation must be laid by a custodian or other qualified witness, or by a certification that complies with Federal Rule of Evidence 902(11) ("Certified Domestic Records of a Regularly Conducted Activity"), or by some statute permitting certification. *See* Fed.R.Evid.

---

[8] Further, the Association Defendants may very well be faced with a hearsay-within-hearsay issue if the Court finds at trial that the statement that Plaintiff smelled gas is being offered for a hearsay purpose, as the medical records and police report, presenting one level of hearsay, includes a statement purportedly made by the Plaintiff or his agent/representative, creating a second level of hearsay. Pursuant to Rule 805 of the Federal Rules of Evidence, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Thus, the parties will have to contend with showing that the records themselves fall within an exception to the hearsay rule **and** that the statement contained within the records fall within an exception to the hearsay rule.

803(6)(D). Furthermore, the records must be "made at or near the time by—or from information transmitted by—someone with knowledge;" the records must have been "kept in the course of a regularly conducted activity of a business, organization, or calling, whether or not for profit;" making the records must be a regular practice of that activity; and, the opponent must not be able to show that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(D).[9]

With respect to the police incident report, it is conceivable that the report itself, constituting hearsay, may be introduced into evidence under the business records exception or under the public records exception contained within Federal Rule of Evidence 803(8). Pursuant to Federal Rule of Evidence 803(8), a record or statement may be excluded from the hearsay rule if it sets out "the office's activities; a matter observed while under a legal duty to report . . . or . . . in a civil case[,] . . . factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

To reiterate, the Court will defer until the time of trial Plaintiffs' motions in limine to exclude any testimony of or reference to the statement that Plaintiff Arkadiusz Pozarlik smelled

---

[9] The Court finds it troubling Plaintiffs' argument in support of excluding the statement contained within the medical records, that the author of the statement into the medical records is unknown, especially when considering the deposition testimony of Leah Rosen, a social worker, who authored the psychosocial assessment notes containing the statement that Plaintiff smelled gas prior to beginning his construction work. Leah Rosen testified that, not only did she likely copy that statement from the medical chart itself, but also would have independently discussed the cause of his accident with the Plaintiff. Specifically, in response to the question: "[i]s there any part of that entry . . . that you would have discussed with the patient? Even though you copied it, would have ask[ed] him, "Is this how the accident happened?," to which Leah Rosen replied: "Absolutely. I would always discuss the injury with the patient and why they are at the medical center." (Doc. 331-6 at 5).

gas that are contained within these records. Accordingly, Plaintiffs' motions in limine (Doc. 329; Doc. 331; Doc. 333), are **DENIED** without prejudice to the Plaintiffs lodging appropriate objections at trial to the testimony or introduction of documents that they deem improper. *See Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) ("[I]f the context of trial would provide clarity, the Court may defer the issues until trial.") (citation omitted); *see also In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986).

### D.   EVIDENCE OF CITIZENSHIP OF PLAINTIFFS

Plaintiffs have filed a separate motion in limine (Doc. 323) seeking to bar any testimony and evidence concerning any reference to the citizenship of the Plaintiffs as irrelevant to any matter at issue, highly prejudicial, and not admissible at the time of trial. Defendants, in opposition Plaintiffs' motion, submit that the issue of citizenship should not be precluded because Plaintiffs will be putting that issue before the jury when their experts discuss Plaintiff's transferrable work skills and level of literacy in English, along with his knowledge of propane and work history in Poland.

Many courts have opined that references to a party's immigration status expose that party to a substantial risk of unfair prejudice. *Andrade v. Walgreens-Optioncare, Inc.*, 784 F. Supp. 2d 533, 535 (E.D. Pa. 2011); *see United States v. Diaz*, 494 F.3d 221, 226 (1st Cir. 2007) ("We accept the notion, as does the government, that evidence of a defendant's illegal immigration status carries with it the potential for prejudice."); *Garcia v. Palomino, Inc.*, No. 09–cv–2115, 2010 WL 5149280, at *1 (D. Kan. Dec. 13, 2010) ("[T]he information Defendants seek, namely information relating to Plaintiffs' immigration status, has no bearing on the underlying issue of this case . . . . [W]hile such information may be relevant to assessing Plaintiffs' credibility, the

Court, like others, finds that 'the damage and prejudice which would result to Plaintiffs if discovery into their immigration status is permitted far outweighs whatever minimal legitimate value such material holds for Defendants.'"); *Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 211 (E.D.N.Y.2010) ("Even where it is arguable that information concerning a plaintiff's immigration status may be relevant, courts have generally held that 'the potential for prejudice far outweighs whatever minimal probative value such information would have.' "); *Rodriguez v. Niagara Cleaning Servs., Inc.*, No. 09–cv–22645, 2010 WL 2573974, at *3 (S.D. Fla. June 24, 2010) ("[C]ourts have held that the likely prejudice of allowing disclosure of the plaintiff's immigration status outweighs the benefits to the defendants, absent some particularized reason for the information."). Because the risk of unfair prejudice here substantially outweighs any probative value that status might have, the Court will **GRANT** Plaintiffs' motion in limine (Doc. 323), and preclude any evidence or testimony regarding Plaintiffs' present or past immigration or citizenship status at trial. To the extent that Plaintiff's transferrable work skills, level of literacy in the English language, knowledge of propane, and work history in Poland are relevant, these issues may be explored at trial without making reference to Plaintiff's immigration or citizenship status. *See Jimenez v. United States, No. 06 C 5943, 2008 WL 3849915, at *1-*2 (N.D. Ill. Aug. 14, 2008).*

E. Evidence of Bella Chernov's Lack of Insurance

As a final matter, Plaintiffs have filed a motion in limine to preclude any objections from the Association Defendants' as to testimony confirming the lack of insurance coverage of homeowner Bella Chernov and the construction workers. (Doc. 321). Specifically, Plaintiffs argue that they do not intend to address any evidence of the Defendant Associations' status of insurance coverage, which is prohibited by Federal Rule of Evidence 411. Rather, Plaintiffs aim

to show that the Association Defendants failed to uphold their own safety protocols set forth in

the Declarations and governing documents by neglecting to inquire into whether Chernov and

her workers maintained appropriate liability insurance.

> Federal Rule of Evidence 411 provides as follows:
>
> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.
>
> Fed. R. Evid. 411.

The Advisory Committee Notes, which provide further clarification of this Rule, offer the

following advisement:

> Rule 411 previously provided that evidence was not excluded if offered for a purpose not explicitly prohibited by the Rule. To improve the language of the Rule, it now provides that the court may admit evidence if offered for a permissible purpose. There is no intent to change the process for admitting evidence covered by the Rule. It remains the case that if offered for an impermissible purpose, it must be excluded, and if offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of Rules 402, 403, 801, etc.

With that framework in mind, it is abundantly clear that Rule 411 precludes admission into

evidence testimony or documents attesting to the existence or lack thereof of the Association

Defendants' liability insurance coverage to prove that the Association Defendants acted

negligently or wrongfully. However, Rule 411 does not explicitly prohibit evidence of

**Chernov's** lack of insurance to prove that the **Association Defendants** acted negligently or

wrongfully. Indeed, the Court notes the explicit inclusion in the Rule of articles "a" and "the,"

which modify the singular noun "person."  Specifically, Rule 411 is structured so as to prohibit

evidence that **a person** (here, the placement of the article "a" signals that the noun "person" it

modifies is indefinite, thus referring to any person) was or was not insured against liability to

prove whether **the person** acted negligently (here, the article "the" signals that the noun it modifies is definite, referring to the specific "person" identified at the beginning of the sentence).

Nevertheless, while Rule 411 does not prohibit the evidence sought to be included by Plaintiffs, the Advisory Committee Notes caution that such evidence is still subject to Rule 403, which authorizes the Court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. In the exercise of the Court's discretion under Rule 403, the Court finds that evidence of whether Chernov and her construction workers maintained homeowners and liability insurance would expose the Association Defendants to unfair prejudice, as such testimony may induce a jury to impose liability on the Association Defendants rather than Chernov, who does not carry liability insurance,  based on an improper inference that Association Defendants have "deep pockets."[10] Therefore, the Court will not permit any evidence of whether Chernov carried appropriate insurance. However, the Court finds it particularly relevant whether the Association Defendants conformed to their own declarations and bylaws requiring that they ensure that homeowners maintain proper insurance. Thus, the Court will preclude the Association Defendants from objecting to lines of questioning relating specifically to whether the Association Defendants ever **requested proof of insurance** from Chernov or otherwise **inquired into** whether Chernov and her construction workers maintained proper insurance.

---

[10] Moreover, the Court is hard pressed to find how evidence of insurance is relevant to a determination of whether the Association Defendants' exhibited negligence.

Accordingly, based upon the foregoing, Plaintiffs' motion in limine (Doc. 321), will be **DENIED IN PART** insofar as the Court will not allow any reference to the presence or absence of insurance, but will permit evidence of whether the Association Defendants investigated into whether Chernov maintained homeowners and liability insurance as required by their own bylaws and declarations.

An appropriate Order follows.

BY THE COURT:

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**