## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., a/s/o VILLAGE AT CAMELBACK PROPERTY OWNER ASSOCIATION, et al., | CIVIL ACTION NO. 3:10-CV-01559 |
| Plaintiffs, | (MEHALCHICK, M.J.) |
| v. | |
| QUEENSBORO FLOORING CORP., et al., | |
| Defendants. | |

### MEMORANDUM OPINION

This is a consolidated action concerning property damage and personal injury claims arising out of an explosion and fire in July 2009 that occurred during construction work at a townhouse located in Tannersville, Pennsylvania.[1] The parties have filed a number of motions in limine in advance of trial in this matter, and the Court now addresses those motions brought pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) and Federal Rule of Evidence 702, to exclude all or part of the expert testimony of Michael Zazula (Doc. 302; Doc. 307), Robert Buckley and Peter Anderson (Doc. 304; Doc. 307), Patrick McGinley (Doc. 309), and Andrew Verzilli and Gary Young (Doc. 315). With the exception of Verzilli,

---

[1] Another case, *Pozarlik v. Camelback Associates, Inc.*, No. 3:11-CV-1349, was consolidated into this action on March 15, 2012. (Doc. 31).

whose hearing was held on March 28, 2016, *Daubert* hearings were held to examine each of these experts over April 11-13, 2016.[2]

## I.   LEGAL STANDARD

Federal courts are vested with broad inherent authority to manage their cases, which carries with it the discretion and authority to rule on motions in limine prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983) (noting that the court exercises its discretion to rule in limine on evidentiary issues "in appropriate cases"), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[2] Defendants the Village at Camelback Property Owners Association, Inc., and its property manager, Kathleen Simoncic (collectively, the "Association Defendants") filed two additional motions in limine seeking to preclude the expert testimony of Plaintiffs' experts Charles Graziano (Doc. 311) and Robert Illo (Doc. 313). Because these two experts were unable to attend the *Daubert* hearings held over April 11-13, 2016, the Court will not rule on the motions to exclude their expert testimony at this time.

**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact[, *i.e.,* fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Fed. R. Evid. 402. Moreover, Rule 702 in particular "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir.1997).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)*; Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials . . . ."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244 & n.11 (collecting cases that illustrate the permissive nature of

qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). The *Daubert* court noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Downing*, 753 F.2d at 1242; "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffer is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

## II.   DISCUSSION

### A.   MICHAEL ZAZULA, ROBERT BUCKLEY, AND PETER ANDERSON

Plaintiffs Arkadiusz Piotr Pozarlik and Agnieszka Zofia Pozarlik challenge the qualifications and reliability of portions of the opinions proffered by the Association Defendants' experts Michael Zazula, Robert Buckley, and Peter Anderson (the "Association experts"). Specifically, Plaintiffs argue that none of the Association experts are qualified to render opinions on the standard of care or liability of the Association Defendants.[3] (Doc. 303, at 11; Doc. 305). Plaintiffs also contend that the Association experts should be precluded from offering testimony that Mr. Pozarlik somehow struck the gas valve or pipe and thus turned it to the "on" position, on the grounds that this testimony would be based on speculation. (Doc. 308, at 9-11). The Court now evaluates both of Plaintiffs' contentions.

#### 1.   Qualifications to Opine on Standard of Care/Liability of the Association

In support of their argument that the Association experts are unqualified to render opinions on the standard of care and liability of the Association Defendants, Plaintiffs note that the Association experts lack any work experience or certifications in the field of property

---

[3] Plaintiffs also challenged Zazula's qualifications to proffer expert opinions on the subject of construction and worksite supervision, as well as OSHA standards. (Doc. 303, at 11). However, to the extent that these issues were not addressed in the Court's earlier Memorandum and Order (Doc. 412; Doc. 413), the Court now finds that Zazula possesses sufficient specialized knowledge to support his opinions that do not pertain to the standard of care or liability of the Association. Zazula was trained to review OSHA guidelines in coursework and seminars as part of his certification by the National Association of Fire Investigators ("NAFI"), and stated in his *Daubert* hearing that he completed a four-day OSHA course. (Doc. 360, at 11, 22). Moreover, Zazula does not claim to give opinions on OSHA violation, and the Court likewise does not find that Zazula rendered opinions on construction and worksite supervision. (Doc. 360, at 11, 16, 22-23). Accordingly, Plaintiffs' challenge to Zazula's qualifications in these respects is therefore denied.

owners associations ("POAs") and property management. (Doc. 303, at 11; Doc. 305, at 5-6).

The Association Defendants argued in their brief in opposition to Plaintiffs' motion in limine

that Anderson is qualified to render opinions on the Association Defendants' responsibilities

because he previously worked as a project engineer contractor for POAs. (Doc. 368, at 23).

Likewise, the Association Defendants contend that Buckley is qualified to give the same

opinions because he examined the site on several occasions, interviewed the Association's

maintenance supervisor Carl Karchner about the Association's maintenance responsibilities

inside the individual units and in the common areas, and reviewed the deposition testimony of

several other Association employees.[4] (Doc. 368, at 24).

      During their respective *Daubert* hearings, each of the Association experts testified that

they had investigated fires that occurred at condominiums and thus worked with POAs before,

and also were familiar with reviewing POA bylaws and declarations. However, Zazula

admitted in his *Daubert* hearing that he was only familiar with some POAs' responsibilities and

that he did not review the Association's declarations. Anderson also conceded on cross-

examination that he lacked formal training in property management, had never been qualified

by any court as an expert in property management, and considered himself an engineer rather

than a property management expert. In the same vein, Buckley admitted that he had no training

in property management or the interpretation of POA governing documents and did not review

the Association's bylaws or declarations as part of his report.

---

[4] In their brief, the Association Defendants also concede that it would be inappropriate for the Association experts to opine on the standard of care, but contend that none of the Association experts provide opinions on the standard of care owed by the Association Defendants. (Doc. 368, at 24-25).

Even under the Third Circuit's liberal interpretation of the qualifications requirement in *Daubert*, this Court finds that the Association experts are unqualified to testify as to their opinions regarding the Association Defendants' duties. None of the Association experts appear to possess any specialized training or expertise in the area of property management. *See Schneider*, 320 F.3d at 404. Although the Association experts previously worked on investigations of fires that occurred on condominium property, spoke with POA employees, and reviewed various POA documents on their own, these factors fail to establish that the Association experts possess a level of skill or knowledge in assessing the responsibilities of the Association Defendants that exceeds those of the average layman.[5] *See Betterbox*, 300 F.3d at 328; *Vorhes v. Mittal Steel USA, Inc.*, No. CIV.A. 06-1130, 2009 WL 959579, at *2 (W.D. Pa. Apr. 6, 2009) (holding that accident reconstruction expert with background in engineering lacked training or expertise to be qualified to opine on duties owed by property managers). Accordingly, the Court grants Plaintiffs' motions in limine to the extent that they seek to preclude the Association experts from proffering opinions on the standard of care or liability of the Association Defendants. (Doc. 303, at 11; Doc. 305).

### 2.  Reliability of Testimony that Pozarlik Struck the Gas Valve

Plaintiffs also seek to preclude as speculative any testimony from the Association experts that Mr. Pozarlik somehow struck the gas valve or pipe and thus introduced the gas into the basement. (Doc. 308, at 1). As noted above, under *Daubert* and Rule 702, an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or

---

[5] The Court also notes with particular concern that both Zazula and Buckley were prepared to opine on the Association Defendants' duties despite not having reviewed the Association's bylaws in preparing their reports.

unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). Plaintiffs argue that there are no factual grounds to support the Association experts' opinion that Mr. Pozarlik somehow struck the gas valve or pipe and thereby turned the valve to the "on" position and caused the gas to leak. (Doc. 308, at 10). However, both the Association Defendants' brief and the *Daubert* hearing testimony from the Association experts reference several facts, supportable by scientific analysis, which indicate that Mr. Pozarlik was the likely source of the gas.

Anderson's expert report takes into account the density of propane gas relative to air to explain that the gas that leaked into the basement accumulated at floor level. (Doc. 368, at 29). Anderson next evaluated the sanders used by Mr. Pozarlik and determined that the sanders' engines were approximately twelve inches from the floor for most of the two hours leading up to the explosion while Mr. Pozarlik sanded the floor. (Doc. 368, at 29). Based on the proximity of the sanders' engines to the floor where the gas accumulated, Anderson next determined that an electric ignition source was present for the majority of the two hours leading up to the explosion. (Doc. 368, at 29). However, if, as Plaintiffs contend, the gas had leaked at a slow consistent rate from the time the heater was removed from the basement, Anderson concluded that a low order explosion or flash fire would have occurred shortly after the accumulation of gas in the basement crossed the lower explosive limit because the ignition source, *i.e.* the sander engine, was present throughout the two-hour period because Mr. Pozarlik only took limited breaks from the sanding job. (Doc. 368, at 30). Based on the magnitude of the explosion and the pattern of destruction created, Anderson found that a high order explosion occurred rather than a low order explosion or flash fire. (Doc. 368, at 30). Therefore, the evidence Anderson considered led him to believe that the gas accumulated at a much quicker rate and beginning at

a later point, while Mr. Pozarlik was sanding. (Doc. 368, at 30). Finally, because Mr. Pozarlik was the only person in the basement at this time, Anderson concluded that Mr. Pozarlik himself must have caused the gas to leak by inadvertently contacting the gas valve and turning the handle to the "on" position."

In his report and *Daubert* hearing, Buckley likewise concluded that the timing of the explosion rendered it far more likely that the gas was introduced to the basement a relatively short time before the explosion rather than leaking consistently from the time the heater was removed, because otherwise the explosion would have occurred much sooner. (Doc. 368, at 32-33). Buckley also reasons that Mr. Pozarlik's deposition testimony that he did not smell a propane odor prior to the explosion supports Buckley's opinion that the gas was not leaking for the entire time while Mr. Pozarlik sanded. (Doc. 368, at 32-33). If, as Buckley suggests, the gas was only released a relatively short time before the explosion, however, Mr. Pozarlik would have had a much more limited opportunity to notice the propane odor, particularly because he took a cigarette break outside just a few minutes before the explosion. (Doc. 368, at 32). Thus, Buckley found that the relevant evidence suggested that the gas had been closed after the heater was first removed from the basement, but that the gas lime must have been opened by Pozarlik at some later time because the evidence suggested that he was the only person to have entered the basement after the heater was removed. (Doc. 368, at 32-33).

As with Buckley, Zazula also noted in his expert report that the distinct odor of propane, coupled with Mr. Pozarlik's deposition testimony that he did not detect any odor, played a significant role in Zazula's findings because Zazula found it implausible that the amount of propane gas required to cause the magnitude of explosion in the case at bar could have accumulated over a prolonged period of time without Mr. Pozarlik detecting the odor. (Doc.

368, at 34-35). In his *Daubert* hearing, Zazula further noted that the typical flow of propane through a gas valve is about 1.5 cubic feet per minute, which would have taken about 45-50 minutes for the accumulation of propane in the basement to reach its upper explosive limit, a much shorter time than the roughly two hours that elapsed between the removal of the heater from the basement and the explosion. Zazula therefore determined that the emission of gas must have begun at a later time, and that the gas valve was probably inadvertently switched to the "on" position by Mr. Pozarlik because there is no evidence that anyone else entered the basement during that timeframe. In support of this conclusion, Zazula also noted that that the physical characteristics of the gas valve were consistent with a finding that Mr. Pozarlik struck the valve and switched it to the "on" position. (Doc. 368, at 35). The valve handle lends itself to interference when in the "closed" position because it protrudes perpendicular to the pipe, whereas the valve handle is parallel to the pipe and thus does not stick out when in the "open" position. Zazula also examined the valve handle and found that it easily could be moved from the "closed" to the "open" position with the application of marginal force. Lastly, Zazula noted markings and damage on the valve and pipe consistent with contact from Mr. Pozarlik's sander or some other potential source.

All three Association experts have sufficiently demonstrated a scientific basis for their opinions grounded in fact. The Association experts also cite to evidence, although circumstantial, that supports their opinion that Mr. Pozarlik somehow struck the gas valve or pipe and thereby turned the valve to the "on" position. Plaintiffs' motion in limine therefore amounts to a challenge to the credibility and weight of the evidence cited by the Association experts, rather than a contention that their findings lacked any evidentiary basis whatsoever. However, "[w]here there is a logical basis for an expert's opinion testimony, the credibility and

weight of that testimony is to be determined by the jury, not the trial judge." *Breidor*, 722 F.2d at 1138-39. Moreover, to the extent that the Association experts are unable to conclude with certainty that Mr. Pozarlik's sander that struck the gas valve and turned the valve to the "on" position, the Court notes that an expert is "not required to rule out *all* alternative possible causes . . . ." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) (emphasis in original). Indeed, "[w]here a fire investigator identifies the cause of fire in terms of probabilities (as opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly probative." *Breidor*, 722 F.2d at 1138 (citations omitted). This Court finds that the Association experts have carried their burden of demonstrating that their methods are reliable under *Daubert* here, as a jury could conclude that the evidence supports the Association experts' conclusion that Mr. Pozarlik's inadvertently striking the gas valve and turning the handle to the "on" position is the only reasonable potential cause of the explosion.[6] Accordingly, Plaintiffs' motion in limine to preclude as speculative any testimony that Mr. Pozarlik introduced the gas into the basement by inadvertently striking the gas valve or pipe is therefore denied. (Doc. 307).

### B. Patrick McGinley

The Association Defendants seek to preclude the testimony of Plaintiffs' expert Patrick McGinley on the grounds of reliability and fit, alleging that he does not employ a recognized

---

[6] Plaintiffs alternatively seek to exclude any evidence that Mr. Pozarlik struck the gas valve as unfairly prejudicial under Rule 403. (Doc. 308, at 9-11). However, the probative value of this evidence is significant because it goes directly to the issue of causation. Moreover, the Court does not find that the introduction of evidence that Mr. Pozarlik struck the gas valve to be unfairly prejudicial or misleading because the Association experts' opinions were based in sufficient facts. Accordingly, this argument also must fail.

methodology in formulating his opinions and improperly makes credibility determinations that should be left to the purview of the jury.[7] (Doc. 309; Doc. 310, at 15-20). In their brief in opposition to the motion in limine, Plaintiffs countered that McGinley's methodology is consistent with fire investigation standards and that McGinley provides knowledge that would be helpful to the jury because his expertise in the characteristics of propane gas goes beyond that of the average layperson. (Doc. 371, at 16-23).

### 1. Reliability of McGinley's Methodology

The Association Defendants allege that McGinley employed no scientific method or recognized methodology in formulating his opinions. (Doc. 310, at 20). In support of this position, the Association Defendants point out that McGinley did not perform a site examination, make specific calculations to estimate the amount of gas that was released into the basement, or analyze Mr. Pozarlik's behavior. (Doc. 310, at 18-20). However, McGinley stated in his *Daubet* hearing that his investigation was conducted pursuant to National Fire Protection Association ("NFPA") standards, the same standards that the Association experts utilized in formulating their reports. (Doc. 371, at 18). Furthermore, McGinley testified that he is an NFPA member and that his methodology had been accepted as reliable by numerous other courts. (Doc. 371, at 16). McGinley stated that under NFPA standards, an investigator must follow the scientific method where the scene is destroyed by the explosion, as was the case with

---

[7] The Association Defendants raise numerous other objections to McGinley's testimony. (Doc. 310). However, this Court has already ruled on the Association Defendants' challenge to McGinley's qualifications (Doc. 412; Doc. 413), and the other issues raised in objection to McGinley's testimony are duplicative of separate motions in limine that the Association Defendants have already filed. Accordingly, these additional challenges to to McGinley's testimony will not be addressed at this time.

Unit 298 here. In following the scientific method, McGinley testified that he reviewed deposition testimony and other documents pertinent to this case, formulated a hypothesis, and tested that hypothesis. (Doc. 371, at 20).

The Association Defendants' objection to McGinley's report appears to stem from the data left out of his report rather than a contention that the data and methodology McGinley actually used were unreliable. However, to the extent that McGinley failed to include relevant data and calculations in his report, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Feit v. Great-W. Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 641 (D.N.J. 2006) ("An expert opinion is not inadmissible because it may contain flaws, nor is it excludable because it provides testimony regarding only one facet or aspect of an action . . . ; such vulnerabilities affect the weight of the testimony, not its admissibility."). Cognizant that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system," the Court finds that the Association Defendants failed to establish that McGinley's omission of certain data from his report rendered his methodology unreliable. *United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) (quoting Fed. R. Evid. 702 advisory committee's note). Accordingly, the Court denies the Association Defendants' motion in limine to preclude McGinley's expert testimony as unreliable. (Doc. 309).

### 2. "Fit" of McGinley's Proffered Testimony

The Association Defendants alternatively argue that McGinley's proffered testimony should be precluded because it fails to "aid the jury in resolving a factual dispute," *Downing*, 753 F.2d at 1242, and instead consists of conclusions of law. (Doc. 310, at 15-18). For instance, the

- 13 -

Association Defendants note that McGinley opines in one section of his report that Mr. Pozarlik "was merely doing is job unaware of the gas accumulation and was strictly a victim of this event, certainly not the cause," whereas elsewhere in the report he finds that "the explosion and fire occurred as a result of carelessness and a lack of safety, supervision and oversight by the entities responsible for overseeing and monitoring the work and disconnecting the propane heater." (Doc. 309-18, at 6-7). The Association Defendants argue that McGinley's proffered opinions should be precluded because trial courts "must ensure that an expert does not testify as to the governing law of the case." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 624 (E.D. Pa. 2011) (quoting *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Trust Agreement*, 812 F. Supp. 1376, 1378 (E.D. Pa. 1992)) ("An expert's 'opinion on a question of law' is not admissible."). Although the Association Defendants concede that under Rule 704 as currently stated, "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Association Defendants rely on the advisory committee's notes to Rule 704 to point out that "opinions must be helpful to the trier of fact" and thus McGinley's opinions could properly be precluded if they "merely tell the jury what result to reach" or "are phrased in terms of inadequately explored legal criteria." (Doc. 310, at 18 (quoting Fed. R. Evid. 704 advisory committee's note)).

Plaintiffs contend that McGinley's proffered testimony should not be precluded because the testimony contains specialized knowledge that would be helpful to the jury. (Doc. 371, at 21-22). Specifically, Plaintiffs point to McGinley's knowledge of the characteristics of propane gas, the effect of propane gas when mixed with air, and the odor of mercaptan that is typically added to propane gas as relevant information that fits the issues in this case. (Doc. 371, at 21-22); *Schneider*, 320 F.3d at 404.

The Court broadly agrees that the majority of McGinley's proffered opinions relate to his specialized knowledge and could be helpful to the jury in deciding the issues in this case. *See Daubert*, 509 U.S. at 591-92; *Schneider*, 320 F.3d at 404. However, the Court also finds that McGinley impermissibly opined on questions of law in portions of his report. *See Berckeley*, 455 F.3d at 217. In opining that "there was no causative activity attributable to Mr. Pozarlik," and that Mr. Pozarlik "was strictly a victim of this event, certainly not the cause," McGinley crosses the line from providing permissible testimony that embraced an issue of fact to improperly opining on the ultimate legal issues in this case. (Doc. 309-18, at 6); *Berckeley*, 455 F.3d at 217. McGinley again gives impermissible legal opinions when he states that "the explosion and fire occurred as a result of carelessness and a lack of safety, supervision and oversight by the entities responsible for overseeing and monitoring the contractors performing work and disconnecting the propane heater." (Doc. 309-18, at 7). These statements both testify as to the governing law of the case, as questions of legal causation and breach of duty will be central to this trial. Therefore, "[s]uch testimony is prohibited because it would usurp the [trial court's] pivotal role in explaining the law to the jury." *Berckeley*, 455 F.3d at 217. Because the trial court explains the law to the jury, McGinley's opinions on questions of law would not be helpful and thus fail the "fit" requirement under *Daubert* and Rule 702. Accordingly, the Court concludes that the sentences of McGinley's report referencing legal causation and breach of duty shall be struck from the report, and McGinley is prohibited from testifying as to those legal conclusions at trial. *See Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012). However, McGinley may proffer opinions as to the remaining contents of his report, as McGinley has sufficiently demonstrated that he possesses specialized knowledge that would be helpful to the jury.

C. Andrew Verzilli and Gary Young

The Association Defendants' final motion in limine addressed in this memorandum seeks to preclude the testimony of Plaintiffs' experts Andrew Verzilli and vocational expert Gary Young on the grounds that their calculations are unreliable and lacking any recognized methodology. (Doc. 315; Doc. 316, at 17-29).

In regard to Verzilli's November 28, 2013 report, the Association Defendants argue that Verzilli failed to: (1) take into account Mr. Pozarlik's tax return that indicated he had only earned $9,250.00 in 2009 up to the date of the explosion, thereby overestimating Mr. Pozarlik's earnings; (2) state that Mr. Pozarlik may have been an independent contractor rather than an employee; (3) explain the Pennsylvania damage guidelines and economic theory that he used to reach his estimates; (4) state that Mr. Pozarlik collects SSI benefits; (5) provide any methodology for his estimate that Mr. Pozarlik's retirement age is 67 years, while omitting the fact that Mr. Pozarlik's work-life expectancy of 21.9 years indicates that he would be likely to retire several years younger; (6) explain why he expected Mr. Pozarlik's annual earnings to eventually rise to $42,590.00 per year; (7) explain the adjustments to his model for seasonal employment fluctuations in the construction industry; (8) explain the estimated future growth rate rates, and why he expected them to change; (9) follow the analysis for the calculation of future lost earnings established in the case of *Kaczkowski v. Bolubasz*, 421 A.2d 1027 (Pa. 1980); (10) account for downward adjustments in future lost income due to illness, job loss/unemployment, time off, and work-related expenses; and (11) explain why he projects the inflation rate and interest rate to be the same. (Doc. 316, at 20-23). The Association Defendants also criticize Verzilli's December 20, 2013 report on similar grounds, arguing that Verzilli fails to adequately explain several of the assumptions in his report. (Doc. 316, at 23-24).

Likewise, the Association Defendants take issue with several statements in Young's November 20, 2013 report, alleging that the report is unreliable because it includes many of the same omissions as Verzilli's reports, and also because Young: (1) alluded to a Mr. Pozarlik having a left leg deformity, cognitive and memory issues, depression, and a potential traumatic brain injury despite Young lacking any independent medical expertise and the lack of any basis for these findings in the medical record; (2) states that plumbing standards, as well as mining and shoemaking work, differ between the United States and Poland without any explanation for his conclusions; (3) states that Mr. Pozarlik may have significant problems with mobility as well as the use of his arms and hands, without providing any basis for these findings; (4) states that the employment in the occupations of floor finisher and carpenter will shrink by 8.1% and grow by 7.1%, respectively, without an explanation for these projections; (4) states that Mr. Pozarlik's future surgeries will not significantly impact his employability, without any basis for this conclusion and in contravention of the opinions stated by Dr. Cohen and Dr. Hensell; (5) fails to state what specific Code of Federal Regulations charts he uses to formulate his opinions, and states that he uses Social Security Disability Charts despite these being inapplicable to his analysis; and (6) fails to take into account that Mr. Pozarlik grew four years older between the time of the accident and the time Young made his calculations. (Doc. 316, at 25-28).

In their brief in opposition to this motion, Plaintiffs argue that both Verzilli and Young employ recognized methodologies that have been accepted in this jurisdiction and elsewhere, and that the information included or omitted in their reports was consistent with those

methodologies.[8] (Doc. 372, at 7-10). Specifically, Plaintiffs contend that the economic model created by Verzilli and adopted by Young is consistent with the *Kaczkowski* case in that it is acceptable for experts to calculate future earning capacity rather than projected actual earnings. (Doc. 372, at 4); *see* 421 A.2d at 1038-39 (permitting introduction of expert evidence as to a plaintiff's potential future earning capacity and abandoning the practice of discounting future lost earnings).

This Court agrees that Verzilli's future earning capacity model is an accepted and reliable method of calculating future lost earnings in light of the standard established in *Kaczkowski*. To the extent that Verzilli chose to include certain factors in his model, such as a high retirement age and rising annual earnings up to $42,590.00 per year, those factors appear consistent with Mr. Pozarlik's maximum "economic horizon" and in line with *Kaczkowski*. Likewise, the factors Verzilli omitted from his report such as Mr. Pozarlik's limited actual earnings in 2009, independent contractor status, and downward adjustments for potential future lost income do not undermine the reliability of Verzilli's calculations of Mr. Pozarlik's future earning capacity, even if the incorporation of these factors into Verzill's model would have more accurately reflected the amount of income that Mr. Pozarlik was most likely to actually realize.[9] *See Paoli*, 35 F.3d at 744 ("A judge will often think that an expert has good grounds to hold the opinion that he or she does even though the judge thinks that the opinion is

---

[8] In support of their contention, Plaintiffs note that Verzilli has previously been qualified as an expert in numerous jurisdictions, including this District, and that Young has been accepted as an expert in 8 states. (Doc. 372, at 2-4).

[9] Furthermore, although the Association Defendants criticize the basis for Verzilli's decision to offset the future inflation and interest rates in his model, this decision was also consistent with *Kaczkowski*. 421 A.2d at 1038-39 ("[W]e find as a matter of law that future inflation shall be presumed equal to future interest rates with these factors offsetting.").

incorrect."). Because the Court does not find that the data omitted or included in Verzilli's report rendered his methodology unreliable, it will refuse the Association Defendants' invitation "to serve as a replacement in the adversary system." *Mitchell*, 365 F.3d at 245 (quoting Fed. R. Evid. 702 advisory committee's note). Instead, the Court invites the Association to challenge any perceived flaws in Verzilli's methodology through cross-examination and the presentation of contrary evidence. *Daubert*, 509 U.S. at 596; *Feit*, 460 F. Supp. 2d at 641 ("An expert opinion is not inadmissible because it may contain flaws, nor is it excludable because it provides testimony regarding only one facet or aspect of an action . . . ; such vulnerabilities affect the weight of the testimony, not its admissibility."). The Court also finds that Verzilli's proffered opinions satisfy the "fit" requirement under *Daubert* because they would be helpful to the jury in calculating the losses Mr. Pozarlik may have suffered. Accordingly, the Court denies the Association Defendants' motion in limine to preclude Verzilli's expert testimony. (Doc. 315).

Many of the Association Defendants' objections to the reliability of Young's report stem from Young's adoption of Verzilli's future earning capacity model. (Doc. 316, at 25-28). Because the Court has already found Verzilli's model to be reliable, these objections also must fail with regard to Young. However, the Association Defendants also challenge some of Young's proffered opinions that were not sourced from Verzilli's report. To the extent that the Association Defendants argue that some medical observations in Young's report lacked any basis in the medical record, Young testified during his *Daubert* hearing that he did not consider medical findings outside of the medical record in formulating his vocational evaluation. The

Court is thus satisfied that these medical observations did not impact the reliability of Young's findings.[10] At his *Daubert* hearing, Young also explained that he interviewed Mr. Pozarlik in person and was able to based conclude on Mr. Pozarlik's description that his past plumbing experience in Poland did not match the skills required of a plumber in the United States, as described in the United States Department of Labor's Directory of Occupational Titles. During the interview, Young also assessed Mr. Pozarlik's motor coordination skills in person by administering a manual dexterity test. Lastly, Young noted that he did not include the potential for Mr. Pozarlik to have increased mobility—and thus increased job prospects—after additional future surgeries because this possibility is speculative.

Based on the clarifications of Young's report in his *Daubert* hearing and the Court's acceptance of Verzilli's future earning capacity model, this Court concludes that the methodology Young applies in his vocational evaluation is reliable. To the extent that the Association Defendants believe that Young's opinions are flawed, they may challenge those opinions through cross-examination at trial. *See Daubert*, 509 U.S. at 596; *Feit*, 460 F. Supp. 2d at 641. The Court further concludes that Young's proffered opinions would be helpful to the jury and thus satisfy the "fit" requirement under *Daubert*. Therefore, the Court also denies the Association Defendants' motion in limine to preclude Young's expert testimony.

---

[10] Although the Association Defendants do not challenge Young's qualifications in their motion in limine, they certainly may object to Young's testimony at trial in the event that he attempts to provide medical opinions.

An appropriate Order follows.

BY THE COURT:

Dated: April 29, 2016                        *s/ Karoline Mehalchick*

KAROLINE MEHALCHICK
United States Magistrate Judge